## Richmond

### WINCHESTER TV CABLE COMPANY v. STATE TAX COMMISSIONER.

September 5, 1975.

Record No. 740933.

Present, All the Justices.

*Lewis M. Costello* (*George W. Johnston, III; Kuykendall, Whiting & Costello*, on brief), for plaintiff in error.

*Charles K. Trible, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

COMPTON, J., delivered the opinion of the court.

The question in this case is whether the owner and operator of a community antenna television (CATV) system is entitled to an exemption from sales and use taxes on certain tangible personal property, under Code § 58-441.6(j) which exempts:

"Broadcasting equipment and parts and accessories thereto and towers used or to be used by commercial radio and television companies or concerns which are under the regulation and supervision of the Federal Communications Commission."

At issue is the applicability of the statutory exemption and not the extent to which it applies to specific items of property.

The taxpayer, Winchester TV Cable Company, appeals the trial court's denial of its Application for Correction of Erroneous Assessments filed in October, 1971, after it had been assessed by the State Department of Taxation with sales and use taxes, penalties and interest of $733.72 for purchases from September, 1966, through May, 1969. Upon consideration of a stipulation of the parties, testimony *ore tenus*, certain exhibits, and memoranda of law submitted by counsel, the trial court, in an order which incorporated a written opinion, determined that the taxpayer was "not engaged in broadcasting" and declared that the assessments were valid.

The taxpayer, a Virginia stock corporation for profit with its principal office in Winchester, owns and operates the CATV system in that city. The record shows that a CATV system consists of an antenna located at a strategic point for the reception of television signals broadcast from distant commercial television stations or transmitted by microwave relay, amplification equipment which boosts the strength of the signals received, conversion equipment which alters the frequency of the signals, and transmission equipment which sends the converted and amplified signals through cables to a subscriber's television set. Thus, the system allows the reception and amplification of signals which are too weak to be detected by the ordinary home television antenna.

The equipment owned and used by the taxpayer in the reception of audio and video signals includes electronic tubes, rectifiers, transformers, filters, transistors, switches, relays, and shielded cable. Shielded cable must be used to prevent the escape of any radio frequency energy into space. The record shows that a length of cable without shielding will act as an antenna when radio frequency energy is fed into it.

The evidence shows that the taxpayer also transmits by cable, to its subscribers' television sets, programming which originates in its own studios. The studio equipment used by the taxpayer includes microphones, video cameras, film, and tape recording equipment.

The record further shows that some of the equipment purchased and used by the taxpayer is interchangeable with and identical to similar equipment used by radio and television broadcasting companies.

The cable system is available throughout the City of Winchester and subscribers receive service through connections called "taps."

Charges are made for each tap at rates established under a franchise granted by the City Council of Winchester in 1965. This tap charge entitled the subscriber to the channels carried by the taxpayer and all programs originated locally.

Any member of the public who is accessible to the cable facilities may become a subscriber, if he is willing to pay the established rate. Only subscribers to the service who are connected to the cable can receive the television signals transmitted by the taxpayer.

The taxpayer operates over rights of way granted by the franchise but pays rental to the Chesapeake and Potomac Telephone Company of Virginia and Potomac Edison Company for space on poles from which the cable is strung.

The taxpayer provides 12 channels for reception of commercial and educational television. It also provides on one of these channels time, weather and temperature by automation and 30 hours a month of locally originated non-automated programs. This non-automated local programming includes area church services, Apple Blossom Festival events, and City Council meetings and, according to the trial court's finding, comprises about .5% of the total programming.

In construing the statute in question, the court below found that the taxpayer is "a concern under the regulation and supervision of the Federal Communications Commission," but concluded that it was not a "broadcaster" because it did not transmit its signals through the air and, therefore, denied the exemption.

The taxpayer argues that the trial court placed an "unwarranted and untenably narrow construction" on the statutory exemption which had the effect of defeating its plain language. It contends that the statute does not require the telecommunications signal to be wireless. It argues that the word "broadcasting" is used in the statute as an adjective which describes the functional capability of the property, and that it is not employed in the exemption in a "verbal or acting sense" to connote the manner in which the property is used.

The taxpayer also points out that some of the equipment it uses is "functionally identical to and interchangeable with other broadcasting parts and accessories" used by radio and television broadcasting companies generally, that, according to the parties' stipulation, such property would be exempt under the statute from Virginia sales and use taxes if purchased by the latter, and that, accordingly, the exemption should have been granted.

It further argues, alternatively, that it is a "broadcaster" and that no distinction can be made in "how" its equipment is used. The taxpayer bases this argument on the fact that it is required by its franchise to serve all members of the public in its franchise area and that it has a duty to "perform," that is, it is required to originate programs locally. It contends that "origination equals performance equals broadcasting."

Finally, the taxpayer argues that even if the foregoing contentions are incorrect, it should nevertheless be granted the exemption because the "broadcasting" and "FCC regulation" provisions of the statute "are joined by the correlative conjunction 'or' and stand independently of each other." It maintains that the trial court properly found that it has been and is subject to regulation by the Federal Communications Commission, therefore, since the two parts of the statutory sentence are to be taken separately, the statute plainly exempts "concerns which are under the regulation and supervision of" the FCC.

The Attorney General argues that under the statute, and under the applicable departmental regulation,[1] four criteria must be met before the taxpayer qualifies for this exemption. It must be a commercial radio or television company or concern; it must be under the regulation and supervision of the Federal Communications Commission; it must be engaged in broadcasting; and the property must be broadcasting equipment, parts and accessories thereto, or towers used directly in broadcasting. He contends that only if the first three criteria are met is it necessary to look to the scope of the exemption set out in the fourth requirement. While conceding that the first two criteria are met in this case, he asserts that the taxpayer does not meet the third requirement because it is not engaged in broadcasting and it is, therefore, not entitled to the benefit of the statutory exemption. We agree and affirm.

■ Initially, we focus on several settled rules of statutory construction. We have followed the rule of strict construction in all cases in-

---

[1] § 1-88 of the Virginia Retail Sales and Use Tax Rules and Regulations (1969) provides:

"**Radio and television broadcasting.**—The tax does not apply to broadcasting equipment and parts and accessories thereto and towers used or to be used by commercial radio and television companies or concerns which are under the regulation and supervision of the Federal Communications Commission. The foregoing applies to tangible personal property used directly in broadcasting by such companies or concerns."

This regulation was promulgated pursuant to Code § 58-441.41 which gives the State Tax Commissioner the power to make and publish reasonable rules and regulations for the enforcement of the provisions of the Sales and Use Tax Act.

volving Code § 58-441.6. Taxation is the rule and not the exception; statutory tax exemptions are construed strictly against the taxpayer; and, when a tax statute is susceptible to alternative constructions, one granting an exemption and the other denying it, the latter construction will be adopted. *Commonwealth* v. *Progressive Community Club*, 215 Va. 732, 734-36, 213 S.E.2d 759, 761-62 (1975). Moreover, we must remember that construction of a statute by a State official charged with its administration is entitled to great weight. 215 Va. at 739, 213 S.E.2d at 763.

These principles furnish the background for our decision in this case. We are of the opinion that the General Assembly intended that the *use* of these items of electronic equipment, and not their functional capability, should determine whether they are exempt from taxation under § 58-441.6(j). There is a distinction among the several exemptions set forth in the statute between property which is by its nature exempt; such as motor vehicles (subsection (f)), and alcoholic beverages (subsection (o)); and property which is used in a certain manner, such as commercial feeds purchased by farmers for use in agricultural production for market (subsection (c)), and ships used or to be used principally in interstate commerce (subsection (i)). The property here falls in the latter category. Accordingly, an item, such as a microphone, a switch or cable, becomes "broadcasting equipment and parts and accessories thereto" only if it is used directly in broadcasting.[2] The case turns, therefore, upon whether this CATV system is engaged in "broadcasting," within the meaning of the statutory exemption. We conclude that it is not.

The Retail Sales and Use Tax Act, Title 58, Chapter 8.1, does not define the word "broadcasting" as used in Code § 58-441.6(j). Therefore, we must ascertain the legislative intent and assign the word its proper meaning. *Commonwealth* v. *Community Motor Bus Co.*, 214 Va. 155, 157, 198 S.E.2d 619, 620 (1973).

The dictionary defines the verb "broadcasting" as "to make *widely known*: to disseminate or distribute widely or at *random* . . . to send out from a transmitting station (a radio or television program) for an *unlimited* number of receivers," and the adjective "broadcast" as

[2] We reject the taxpayer's argument that the language of the exemption should be divided into independent parts, thereby qualifying the taxpayer for the exemption merely because it is a "concern" which is under FCC regulation and supervision. The sentence is composed of interdependent parts and a proper reading shows that the exemption runs to "broadcasting equipment . . . used or to be used by . . . companies or concerns" regulated and supervised by the FCC.

"made *public* by means of radio or television." (Emphasis added). Webster's Third New International Dictionary 280. The taxpayer's CATV system does not transmit signals at "random" or "widely" or to "an unlimited number of receivers" or to the "public," as does a radio or television broadcaster. CATV signals are disseminated by wire only to those who have subscribed to the service and paid the fees. A broadcaster's signals are transmitted into space for anyone, who has the equipment and is within range of the signal, to receive. And the fact that the taxpayer is required to serve all members of the public who are accessible to the cable and who are willing to pay the established rate does not affect this distinction.

This distinction between CATV systems and broadcasting has been recognized by the United States Supreme Court, albeit in the context of the Copyright Act. *Teleprompter Corp.* v. *Columbia Broadcasting System, Inc.,* 415 U.S. 394 (1974); *Fortnightly Corp.* v. *United Artists Television, Inc.,* 392 U.S. 390 (1968). In *Teleprompter,* the Court considered whether the reception and retransmission of the signal received from a broadcasting station by a CATV system constituted a "performance" of a copyrighted work. The Court adhered to the conclusion reached in *Fortnightly* "that CATV systems act only as an extension of a television set's function of converting into images and sounds the signals made available by the broadcasters to the public," 415 U.S. at 402-03, and found no copyright infringement. In *Fortnightly,* when discussing the function that CATV plays in the total process of television broadcasting and reception, the Court stated that: "The function of CATV systems has little in common with the function of broadcasters. CATV systems do not in fact broadcast or rebroadcast. Broadcasters select the programs to be viewed; CATV systems simply carry, without editing, whatever programs they receive. Broadcasters procure programs and propagate them to the public; CATV systems receive programs that have been released to the public and carry them by private channels to additional viewers." 392 U.S. at 400 (footnotes omitted).

The reasoning of the Court in *Teleprompter* may be properly applied to answer the taxpayer's alternative argument that it is a "broadcaster" because it "performs" as the result of originating programs locally. In *Teleprompter,* the Court dealt with CATV systems which "originate[d] programs wholly independent of the programs that they receive[d] off-the-air from broadcasters and rechannel[ed] to their subscribers." 415 U.S. at 404. It held, however, that this fact

did not make the CATV system a "performer" under the Copyright Act because the origination service on the one hand, and the reception and retransmission service on the other hand, remained separate and distinct operations, even though they were sold as a "package" to the subscribers. The Court refused to hold that the CATV system became a "performer" of the broadcast programming when it included local origination in its total services. 415 U.S. at 405. Likewise, we refuse to conclude in this case that this CATV system is a "broadcaster" merely because it includes local origination within its total programming.

Accordingly, we hold that this taxpayer is not engaged in "broadcasting" within the meaning of Code § 58-441.6(j).[3]

Finally, we have considered the taxpayer's remaining contentions, which are based on constitutional grounds, and find them to be without merit.

For these reasons, and after giving the required weight to the construction of the exemption by the State Tax Commissioner, we construe the statute strictly against the taxpayer and hold that the exemption was properly denied. The judgment of the trial court is therefore

*Affirmed.*

---

[3] We are not persuaded by the decision in *Rollins Broadcasting of Delaware, Inc.* v. *Hollingsworth*, 248 A.2d 143 (Del. 1968), heavily relied on by the taxpayer. In that zoning case, which involved an application for a special zoning exception to allow construction of a CATV tower, it was stated "that a CATV tower is a 'broadcasting tower' within the meaning of the Zoning Code." 248 A.2d at 146. In such a case, one important consideration is the physical characteristics of the subject structure. Therefore, a zoning finding that a CATV tower is equivalent to a broadcasting tower is not authority for holding in a tax case that a CATV system is equivalent to broadcasting.