# Chesterfield Cablevision, Inc.

## v.

# County of Chesterfield

Record No. 900717

March 1, 1991

Present: All the Justices

*Gary B. Patterson (N. Leslie Saunders, Jr.; Minor, Saunders, Cary & Patterson,* on briefs), for appellant.
*Jeffrey L. Mincks, Deputy County Attorney (Steven L. Micas, County Attorney,* on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

The dispositive issue in this erroneous tax assessment case is whether a cable communication television service is entitled to the same exemption from business privilege license taxation, provided by Code § 58.1-3703(B)(3), to which operators of a "television broadcasting station or service" are entitled.

The facts are undisputed. Chesterfield Cablevision, Inc. (CCI), owns and operates a cable television service in Chesterfield County. Its business involves the communication of television programs by cable to individual subscribers who pay a monthly fee for the right to connect their receivers to CCI's cable. Chesterfield County has adopted a license tax ordinance which requires every person engaged in business within the County to pay a license tax for the privilege of doing business unless the business is exempt from taxation by law. The ordinance specifically lists "supplier of cable TV" as a business subject to the tax.

Code § 58.1-3703(B)(3) provides, in pertinent part, that no locality "shall levy any license tax . . . [u]pon the privilege or right

of printing or publishing any newspaper . . . or for the privilege or right of operating or conducting any radio or television broadcasting station or service."

CCI was assessed with license taxes for 1985 and subsequent years under the ordinance. It paid the taxes for 1985 and 1986, but applied to the local Commissioner of Revenue for exoneration from the assessments for 1987 and 1988. After denial of that application, CCI filed this proceeding for correction of erroneous assessments, asking exoneration from license tax assessments for 1987, 1988, and 1989, as well as refunds of prior taxes paid in error. CCI asked that the county ordinance imposing the tax be declared void as violative of Code § 58.1-3703(B)(3) as well as the free speech-free press guarantees of the Virginia and Federal Constitutions. The County demurred on the ground that CCI was not engaged in "broadcasting." The trial court sustained the demurrer and dismissed the case by order entered March 2, 1990. We granted CCI an appeal.

■ CCI first argues that it is included in the statutory category of those engaged in "operating or conducting any radio or television broadcasting station or service," and is therefore exempt from license taxation pursuant to Code § 58.1-3703(B)(3). We do not agree. CCI is a television service, but it is not a broadcasting service. In the statute, "broadcasting" modifies both "station" and "service." CCI is not engaged in "broadcasting."

■ We specifically held, in *Winchester TV Cable* v. *State Tax Com.*, 216 Va. 286, 290, 217 S.E.2d 885, 889 (1975), that a cable television service was not engaged in "broadcasting." There, we quoted *Fortnightly Corp.* v. *United Artists*, 392 U.S. 390 (1968), which said:

> The function of CATV systems has little in common with the function of broadcasters. CATV systems do not in fact broadcast or rebroadcast. Broadcasters select the programs to be viewed; CATV systems simply carry, without editing, whatever programs they receive. Broadcasters procure programs and propagate them to the public; CATV systems receive programs that have been released to the public and carry them by private channels to additional viewers.

216 Va. at 291, 217 S.E.2d at 890 (quoting *Fortnightly*, 392 U.S. at 400). Two years after *Winchester TV Cable*, we reiterated its

holding in *WTAR Radio-TV* v. *Commonwealth*, 217 Va. 877, 881, 234 S.E.2d 245, 247 (1977). The statutory exemption, therefore, is of no avail to CCI.

CCI and amici curiae* next argue that if cable television services are not included within the exemption accorded to broadcasters, then the statutory scheme offends the free speech and free press guarantees of the Virginia and Federal constitutions. They contend that the tax, construed according to the trial court's ruling, impermissibly discriminates between businesses entitled to First Amendment protection. Amici curiae also make the sweeping argument that *any* business license tax imposed upon activities involving the First Amendment is a form of "press licensure," abhorrent to the free speech and free press principles embedded in our constitutions.

We are not persuaded by either argument. Cable television services are entitled to First Amendment protection, as the County concedes. That protection does not, however, render publishers immune from taxation. *Grosjean* v. *American Press Co.*, 297 U.S. 233, 250 (1936); *see also, Minneapolis Star* v. *Minnesota Comm'r of Rev.*, 460 U.S. 575, 581 (1983). The effect of the First Amendment, in the arena of taxation, is to protect such taxpayers against prior restraints on free expression, *Grosjean*, 297 U.S. at 248-49, taxation based upon content of the matter published, *Arkansas Writers' Project, Inc.* v. *Ragland*, 481 U.S. 221 (1987), or taxation which singles out the press for a burden not placed on other businesses, *Minneapolis Star*, 460 U.S. at 581. The Chesterfield County license tax has none of those invidious effects.

We turn, therefore, to the question of discrimination. Where like enterprises are entitled to First Amendment protection, they must be taxed alike. Where differing enterprises are entitled to First Amendment protection, however, they may be taxed differently, if the distinction between them has a rational basis. *Regan* v. *Taxation With Representation of Washington*, 461 U.S. 540, 547 (1983).

Statutes are entitled to a presumption of constitutional validity. *City of Charlottesville* v. *DeHaan*, 228 Va. 578, 583-84, 323 S.E.2d 131, 133 (1984). Unless a "suspect classification" is involved, the legislature may, constitutionally, treat different sub-

---

* Media General, Inc., and Virginia Cable Television Association.

jects differently for the purpose of taxation (1) if the difference is real, (2) if the distinction has some relevance to the legislative purpose, and (3) if the differing treatments are "not so disparate, relative to the difference in classification, as to be wholly arbitrary." *Portsmouth* v. *Citizens Trust*, 216 Va. 695, 698, 222 S.E.2d 532, 534 (1976) (quoting *Walters* v. *City of St. Louis*, 347 U.S. 231, 237 (1954)); *see also Hearst* v. *Iowa Dept. of Rev. & Finance*, 461 N.W.2d 295 (Iowa 1990) (retail tax on magazines upheld although not applicable to newspapers).

■ Our holding in *Winchester TV Cable*, quoted above, articulates the distinction between "broadcasting" and television cable services. That distinction, in itself, meets the first part of the threefold *DeHaan* test set forth above. It is apparent from the undisputed facts that the other two parts of the test are also met. Therefore, there was a rational basis for the legislative decision to tax those differing businesses differently.

Because we conclude that CCI is not exempt from the tax and that the scheme of taxation, as applied to CCI, offends neither the First Amendment nor the Fourteenth Amendment, we will affirm the trial court's judgment.

*Affirmed.*