## CIRCUIT COURT OF ARLINGTON COUNTY

Mutual Broadcasting
System, Inc.

v.

Arlington County

May 6, 1999

Case Nos. (Law) 97-1232, 94-1483

BY JUDGE JOANNE F. ALPER

These cases came before the Court for trial on February 23, 1999, upon the Application of Mutual Broadcasting, Inc. (hereinafter referred to as "Mutual") to recover business license taxes allegedly erroneously assessed by Arlington County. The issue before the Court is whether Mutual is entitled to a business license tax exemption provided for in Va. Code § 58.1-3703. The Court's decision herein will be based upon an analysis of this statute against a background of facts which are generally undisputed.

### *Factual Background*

Mutual has been based in Arlington County and conducting its business since 1977. Prior to 1993, the County did not assess its business, professional, and occupational license (hereinafter referred to as "BPOL") tax on Mutual. For tax years 1990 through 1995, the County has assessed and Mutual has paid under protest $518,852.00 in BPOL taxes, including late payment penalties and interest. These two cases filed by Mutual seek the return of those payments plus interest on the basis that Mutual is a "radio broadcasting service" within the meaning of the subject statute and therefore exempt from those taxes.

Mutual produces a variety of live and recorded radio programs at its studios in Arlington, Virginia, and at its off-site mobile facilities. Using an extensive system of sophisticated electronic equipment, this programming is transmitted to an earth station and then to a satellite from which the signal is transmitted to a variety of radio broadcasting stations throughout North America and the world, most of which are contractual affiliates of Mutual. It is uncontradicted, however, that the signal is also received and rebroadcast by radio stations which are not affiliates of the Mutual Broadcasting System, including, but not limited to, the Armed Forces Radio Network and radio stations operated by various colleges, universities, and other institutions of learning. None of the stations which are unaffiliated and rebroadcast Mutual's signal and programming pay any fee to Mutual, nor does the public pay a fee to Mutual. In addition, the signal and programming from the satellite may also be received by members of the listening public who have a specific, unique type of receiver. Most of such listeners are found most frequently in rural areas west of the Mississippi that may not be within the broadcast area of an individual station affiliate of Mutual. Mutual presented extensive technical testimony which was uncontradicted by the County to demonstrate that the activities performed by Mutual at its facilities in Arlington are a necessary part of producing and transmitting programs of news, current events, sports, and other programming to the public. In many ways, Mutual operates in much the same way as other national radio and television broadcasting networks such as CBS, NBC, and ABC in that its correspondents cover certain national and international events and provide news and information about those events to the network's affiliates. In fact, the unrebutted testimony was that in the vast majority of cases when local radio stations rebroadcast Mutual programs, they do not edit or change Mutual's programming at all.

Mutual asserts that as a matter of fact and law, its activities qualify it as a "radio broadcasting service" under Va. Code § 58.1-3703 thereby rendering it exempt from the BPOL taxes. The County takes the position that since Mutual does not broadcast directly to the public, but rather transmits its signal to its affiliates which thereafter broadcast to the public, it is not a "radio broadcasting service" as defined by the statute.

### Analysis of the Statute

Both parties agree that the statute which controls the decision in this case is Va. Code § 58.1-3703. That section states, in pertinent part:

A. The governing body of any county, city or town may levy and provide for the assessment and collection of [business license taxes] … subject to the limitations provided in subsection B of this section.

B. No county, city, town shall impose a license fee or levy any license tax … .

3. [F]or the privilege or right of operating or conducting any radio or television broadcasting station or service.

The parties disagree vigorously as to whether the statute is one which gives authority to the County only to levy those taxes against those taxpayers which are specifically authorized, thereby placing the burden of proving Mutual's inclusion under the County's taxing authority on the County, or whether it is one of exemption placing the burden upon the taxpayer, Mutual, to prove that it qualifies for the statutory exemption. Mutual has argued that this statute is a limitation of the County's authority and thereby the taxation authority should be strictly construed against the County; conversely, the County has argued that this is an exemption statute and it must be strictly construed against the purported taxpayer.

In resolving this issue, the Court finds instructive the opinion of Justice Russell in the case of *Chesterfield Cablevision, Inc. v. County of Chesterfield*, 241 Va. 252 (1991), cited by both parties, which dealt with the issue of whether a cable television service was exempt from the BPOL tax under Va. Code § 58.1-3703(B)(3). In beginning his opinion, Justice Russell, a former member of this Court, stated:

The dispositive issue in this erroneous tax assessment case is whether a cable communication television service is entitled to the same *exemption* from business privilege license taxation, provided by Code § 58.1-3703(B)(3), to which operators of a "television broadcasting station or service" are entitled.

241 Va. at 253 (emphasis added).

In concluding that Chesterfield Cablevision was not a broadcasting station or service as defined by the statute, Justice Russell concluded that "the statutory *exemption*, therefore, is of no avail to CCI." 241 Va. at 255 (emphasis added). Moreover, throughout the opinion, Justice Russell uses the term "exemption" relating to the issue of whether the petitioner was required to pay taxes under the statute. This Court believes that when Justice Russell used the words "exempt" and "exemption" to describe and frame the issue of whether Chesterfield Cablevision was subject to this statutory provision, in an

opinion in which he was joined unanimously by the entire Supreme Court, that language and ruling is entitled to great weight. Justice Russell's opinion was precise, concise, and succinct, and this Court does not believe that he or the Supreme Court carelessly used words without giving them their full and intended meaning. Therefore, this Court finds that Va. Code § 58.1-3703(B)(3) creates an *exemption* from taxation. As such, it is subject to the ruling of the Virginia Supreme Court in the case of *WTAR Radio-TV Corp. v. Commonwealth*, 217 Va. 877 (1977), that:

> Virginia adheres to this rule of strict construction of tax exemption. Taxation is the rule, not the exception. Therefore, tax statutes are strictly construed against the taxpayer. When a tax statute is susceptible to two constructions, one granting an exemption and the other denying it, the latter construction is adopted.

217 Va. at 879, citing *Winchester TV Cable Co. v. Commissioner*, 216 Va. 286, 289-90 (1975).

*Has Mutual Carried Its Burden to Prove*
*It Is Entitled to the Statutory Exemption?*

The County relies on the reasoning in the *Chesterfield Cablevision* to establish that Mutual does not operate a "broadcasting station or service" and that its operation is similar to that of a cable television system. The Supreme Court held that since cable TV operators sent programming only to subscribers of the service and not the public at large, they did not qualify as broadcasting stations or services. The Supreme Court noted the distinction between broadcasting and operating a cable television service, as follows:

> The function of CATV systems has little in common with broadcasters. CATV systems do not in fact broadcast or rebroadcast. Broadcasters select the programs to be viewed; CATV systems simply carry, without editing, whatever programs they receive. Broadcasters procure programs and propagate them to public; CATV systems receive programs that have been released to the public and carry them by private channels to additional viewers.

*Chesterfield Cablevision*, 241 Va. at 254, quoting from *Winchester Cable v. State Tax Commission*, 216 Va. 286 (1975).

In *Winchester Cable TV*, the issue was whether the owner and operator of a cable television system was exempt from sales and use tax on certain tangible personal property under then Va. Code § 58-441.6(j), which exempted, *inter alia* "broadcasting equipment." In order to resolve the case, the Court looked to the dictionary definition of the term "broadcasting" which was:

> to make widely *known*: to disseminate or distribute widely or at *random* … to send out from a transmitting station (a radio or television program) for an *unlimited* number of receivers … .

216 Va. at 290 (emphasis in the original). The Court held that since the cable television system did not transmit signals at random or widely or to an unlimited number of receivers or to the public, but rather only to subscribers who had paid for the service, the cable system's operation did not qualify as "broadcasting" under the statute.

In this case, Mutual presented extensive testimony as to the technical method whereby radio programming which either originates in its studio in Arlington or at a remote location is electronically transmitted to its affiliate stations and others. That fact and expert testimony was unrebutted by the County and is extensively detailed in Mutual's post-trial briefs. What is critical to this Court's decision is how Mutual's activities conform to the definition of broadcasting established by the Supreme Court. Mutual's signal is transmitted from the satellite into space and is picked up by both Mutual's affiliates, other entities mentioned earlier who are not affiliates, i.e, the Armed Forces Radio Network, and individuals with the proper equipment. Accordingly, the signal is "transmitted into space for anyone, who has the equipment and is within range of the signal, to receive." *Winchester Cable TV*, 216 Va. at 291. Mutual's signal is received by millions of listeners who are members of the general public; therefore, Mutual's signal is "widely known … disseminate[d] or distribute[d] widely or at random … ." 216 Va. at 290. Mutual's programs are capable of being heard by an "unlimited number of receivers … ." 216 Va. at 290.

The County's argument appears to be based upon the fact that, except for the few listeners who have the appropriate equipment, Mutual's signal is transmitted first to the affiliates who pay a fee for the programming and then broadcast by the affiliates to the general public. Neither the statute nor the case law interpreting the statute provides any basis to support the County's argument. It is notable that in the deposition of the deputy commissioner of revenue, the County's designee for this case, she testified, "While broadcast

service is not defined in the statute, its import goes to functions that enhance, sustain, process, refine, or directly produce the transmission or dissemination ... ." (Mutual exhibit 19 at p. 30.) Mutual presented the testimony of one of its employees, George Thomas, director of broadcast operations, that the equipment contained in Mutual's Arlington studios and used in its broadcasting operations was involved in producing, enhancing, sustaining, processing, and refining the broadcast signal. That testimony was unrebutted by the County. Therefore, this Court concludes that Mutual has carried its burden of proof that it is a "radio broadcasting service" and is entitled to the exemption from Arlington County's BPOL tax under Va. Code § 53.1-3703(B)(3).

## Conclusion

The Court has found as set forth above that Mutual is a radio broadcasting service as defined in Va. Code § 58.1-3703(B)(3). Accordingly, it is exempt from Arlington County's BPOL tax, and the assessments against Mutual for tax years 1990 through 1995 were erroneous. The County is ordered to refund those taxes, together with interest thereon, and judgment will be entered in favor of Mutual and against the County.