Present: All the Justices

ARLINGTON COUNTY

v.  Record No. 992662    OPINION BY JUSTICE ELIZABETH B. LACY
                                      November 3, 2000
MUTUAL BROADCASTING SYSTEM, INC.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

Arlington County appeals the decision of the trial court that Mutual Broadcasting System, Inc. (Mutual) is entitled to an exemption from the business license tax pursuant to Code § 58.1-3703(C)(3) because it operates a radio "broadcasting station or service."[1]  Because the record supports the trial court's findings that Mutual widely disseminated and transmitted its radio signal for reception by the general public, we will affirm the judgment of the trial court.

I.

Mutual produces a variety of radio programs at its studios in Arlington County, Virginia.  The broadcast signal for these programs is processed in a "master control room area" at Mutual's studios through complex equipment which routes, monitors, and adjusts the signal for further transmission.  The refined signal is sent from the master control room to a satellite "earth station" uplink facility by one of two methods.  It may be broadcast from a "KU" satellite

_____

[1] During the years in question, the same language was in former Code § 58.1-3703(B)(3).

antenna located on the roof of the Arlington facility or through a "T1" telephone line.  Programming transmitted through the "T1" telephone line is converted to digital pulses for transmission over the line and then converted back to a radio signal when it reaches the earth station.  Approximately seventy-five percent of Mutual's programming is transmitted over the "T1" line.

The earth station, located in Mount Vernon, New Jersey, relays the radio signal to a communications satellite located in space, which, in turn, relays the signal back to earth. The signal is received by several thousand radio stations affiliated with Mutual through contractual arrangements.  The affiliate radio stations then rebroadcast the radio signal to the public.  The radio signal is also received and rebroadcast by non-affiliate stations such as college radio stations and the United States Armed Forces Radio Network.  Furthermore, the radio signal can be received by members of the public directly, if they have appropriate equipment.[2]  The radio signal is not encoded or encrypted and there is no fee for receiving this signal.  Mutual's broadcasts are paid for by advertising revenues.

---

[2] Members of the public with appropriate equipment may also receive the radio signal directly from the "KU" satellite transmission of the signal from Mutual's Arlington facilities to the earth station.

Though Mutual owns the Arlington facilities, its parent company, Westwood One, Inc. (Westwood), owns the "KU" satellite and possesses the Federal Communications Commission (FCC) license for these radio transmissions. The earth station is owned by General Electric. Mutual does not own the satellite, but has a "capital lease" for it which covers over ninety percent of the estimated use of the life of the satellite. Thus, for financial accounting purposes, Mutual "owns" the satellite.

The County assessed business license taxes against Mutual based on its gross receipts. Mutual filed two applications challenging these assessments; the first application covered the years 1990-1993, and the second addressed years 1994 and 1995. In both applications Mutual asserted that the assessments were erroneous because it was exempt from the tax pursuant to Code § 58.1-3703(C)(3) and that the County's assessments were not fairly apportioned and, thus, unconstitutional. The applications were consolidated. The trial court granted the County's motion for partial summary judgment and dismissed Mutual's constitutional claims. Following an ore tenus hearing, the trial court determined that Mutual was entitled to the exemption from taxation and ordered the County to refund to Mutual $652,833.47 in taxes, penalties, and interest. The County filed this appeal.

The County assigns five errors to the trial court's judgment which effectively raise two issues. First, the County asserts that the trial court did not strictly construe the broadcast exemption statute to give the statute the construction which would deny the exemption and resolve any doubt in favor of taxation. Second, the County asserts that the trial court erred in finding that Mutual disseminates its programming to the public and transmits radio signals for general reception, thereby qualifying Mutual for an exemption under Code § 58.1-3703(C)(3). We consider these issues in order.

## II.

The trial court, relying on Chesterfield Cablevision, Inc. v. County of Chesterfield, 241 Va. 252, 401 S.E.2d 678 (1991), concluded that Code § 58.1-3703(C)(3) provided an exemption from taxation and, as such, must be strictly construed. That is to say, if the statute is subject to more than one interpretation, the construction denying the exemption must be adopted and any doubt must be resolved in favor of taxation. WTAR Radio-TV Corp. v. Commonwealth, 217 Va. 877, 879, 234 S.E.2d 245, 247 (1977); Winchester TV Cable Co. v. State Tax Comm'r, 216 Va. 286, 290, 217 S.E.2d 885, 889 (1975). Nevertheless, the County asserts that the trial court did not apply strict construction to this statute.

4

Code § 58.1-3703(C)(3) provides:

> C.  No county, city, or town shall impose a license fee or levy any license tax . . . for the privilege or right of operating or conducting any radio or television broadcasting station or service[.]

In Chesterfield Cablevision, a cable television company sought an exemption from taxation under this statute.  In resolving the issue, we applied the definition of "broadcasting" previously adopted in Winchester TV.  Winchester TV involved Code § 58-441.6(j), an exemption from sales and use taxes.  We concluded that "broadcasting" as used in that statute means

> "to make *widely known*: to disseminate or distribute widely or at *random* . . . to send out from a transmitting station (a radio or television program) for an *unlimited* number of receivers, . . ."
>
> . . . .
>
>         . . . transmitted into space for anyone, who has the equipment and is within range of the signal, to receive.

Winchester TV, 216 Va. at 290-91, 217 S.E.2d at 889.  In applying this definition, we have concluded that programming which was delivered only to paid subscribers was not "broadcasting" because such programming was not disseminated or transmitted to the general public, Chesterfield Cablevision, 241 Va. at 254, 401 S.E.2d at 679-80; Winchester TV, 216 Va. at 291, 217 S.E.2d at 889, and that equipment used in the production of programs was not "broadcasting equipment"

5

unless it was used directly in "the act of disseminating a signal into the air," WTAR Radio-TV, 217 Va. at 882, 234 S.E.2d at 248.

The trial court, again relying on Chesterfield Cablevision, applied the construction of "broadcasting" set out above and held that Mutual was performing a broadcasting service because its activities were directly involved in transmitting and disseminating its radio signal to the general public.

The County does not suggest that a different definition of "broadcasting" was required to satisfy a strict construction of the statute. In fact, in its briefs before this Court and the trial court, the County applies the trial court's construction of the term. The County's real disagreement is not with the trial court's interpretation of the statute, but with the trial court's determination that the evidence presented showed that Mutual's activities met the definition of "broadcasting." Thus, we will turn to the County's remaining issue, that is, whether Mutual engages in activities which constitute the direct transmission and dissemination of its radio signal to the general public.

III.

The trial court found that Mutual's signal "is transmitted from the satellite into space and is picked up by

6

both Mutual's affiliates, other entities . . . who are not affiliates, i.e., the Armed Forces Radio Network, and individuals with the proper equipment" and "received by millions of listeners who are members of the general public." The County asserts that this finding is erroneous because although Mutual produces programs which are "eventually widely disseminated to the public," the transmission or dissemination of the programs is performed by independently owned and operated radio stations and, thus, Mutual does not itself transmit the radio signal in all directions to the public. Mutual, the County asserts, possesses no FCC license to broadcast. The broadcasters, according to the County, are the affiliate stations; Mutual is only a producer or distributor of the programs.

The County argues that the portion of Mutual's programming that is sent to the earth station via the "T1" line from the Arlington facilities is not the transmission of a radio signal and is not available to the public. With regard to the remaining programming transmitted to the earth station via the "KU-band" satellite, the County argues that Westwood, Mutual's parent company, transmits this signal and holds the license from the FCC to do so. Continuing, the County argues that because Mutual owns neither the earth station nor the satellite and does not possess an FCC license

to transmit signals from the satellite, Mutual does not transmit its radio signal at all.

The County's position challenges findings of fact made by the trial court.[3] The standard of review we apply to such challenges requires that we accept the trial court's findings of fact as true, unless they are without support in the record.  Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991).

First, we reject the County's argument that Mutual's activities are not "broadcasting" because Mutual does not possess an FCC broadcasting license.  The definition of "broadcasting" which we have adopted does not include a requirement that a broadcaster have an FCC broadcasting license, and the failure to have such a license, while a factor to consider, is not dispositive in determining whether Mutual is disseminating its radio signal to the public.  See WTAR Radio-TV, 217 Va. at 880, 234 S.E.2d at 247 (FCC regulations do not control meaning of broadcasting).

---

[3] The County variously states that the facts are "essentially undisputed" and that the "legal conclusions to be drawn from the undisputed facts are at issue . . . ."  The County also asserts that it assigned error to the trial court's factual finding "that the broadcast signal received by the public is Mutual's and not that of others, i.e., General Electric and the independent radio stations."  We consider these assignments of error as challenges to the factual findings of the trial court and review them accordingly.

The County's basic contention is that because Mutual does not own the equipment utilized in the process of transmitting its radio signal to the public, it does not broadcast its radio signal and, therefore, does not qualify as operating or conducting a broadcasting service pursuant to Code § 58.1-3703(C)(3). We reject this contention.

In determining whether an entity is operating or conducting a broadcasting service, we examine the entity's activities up to the point at which the entity releases control of the transmission or dissemination of its programming or signal. Ownership of the equipment used in the process of transmission is not determinative of the scope of an entity's activities. As noted above, Mutual has a "capital lease" for the satellite covering approximately ninety percent of the estimated use of the life of the satellite. The use of the satellite, therefore, is controlled by Mutual through this contract. The fact that Mutual chooses to lease rather than own the equipment used in the dissemination or transmission of its radio signal does not alone defeat a finding that Mutual engages in a "broadcasting service."

The record does not show the contractual relationship between the owner of the earth station and Mutual; however, it is fair to infer that Mutual retains control during transmission of the signal to the satellite because of

9

Mutual's continuing control of the use of the satellite through its lease. Similarly, the record does not show the relationship, contractual or otherwise, between Mutual and Westwood, the owner of the satellite transmitting Mutual's radio signal to the earth station. Nevertheless, for the same reason, it is fair to infer that Mutual retains control over its signal while the signal is transmitted by Westwood to the earth station because Mutual has control over the satellite transmission of the signal.

The record supports the conclusion that Mutual retains control of the transmission or dissemination of its radio signal through the point at which the signal is transmitted by the satellite. The record also shows that at that point Mutual's radio signal can be captured by not only affiliate radio stations, but also by non-affiliate radio stations such as colleges and other institutions of learning as well as the Armed Forces Radio Network. Additionally, any member of the listening public who has a specific type of receiver can receive Mutual's broadcast signal as it is transmitted from the satellite. Neither these listeners nor the non-affiliate radio stations pay any fee to Mutual for this programming. This arrangement is not analogous to cases in which transmission was made only to paying subscribers. See WTAR Radio-TV, 217 Va. at 881, 234 S.E.2d at 247; Winchester TV,

10

216 Va. at 291, 217 S.E.2d at 889. The record supports the trial court's finding that Mutual created, transmitted, and disseminated radio signals to the public and, therefore, was engaged in broadcasting.

Finally, the trial court also noted in its opinion letter that according to a deputy commissioner of revenue, the "import" of the broadcast exemption statute "goes to functions that enhance, sustain, process, refine or directly produce the transmission or dissemination." This definition as well as the statute itself recognizes that an entity need not be a radio or television "station" to qualify for the exemption. As we stated in WTAR Radio-TV, equipment which is used directly in disseminating or transmitting the signal into the air is considered "broadcasting equipment" for purposes of the sales and use tax statute. 217 Va. at 882, 234 S.E.2d at 248. Similarly, activities which are directly related to the dissemination and transmission of the radio signal are broadcasting services for purposes of Code § 58.1-3703(C)(3). The trial court determined that Mutual's activities were a "radio broadcasting service" under this definition and we conclude that the record supports that finding.

For the reasons stated, we will affirm the trial court's judgment that Mutual carried its burden of proof that it is a

11

"radio broadcasting service" and qualifies for the exemption from a business license tax under Code § 53.1-3703(C)(3).[4]

                                                            Affirmed.

_____

[4] In light of our holding, we do not address Mutual's assignments of cross-error regarding whether the apportionment of the taxes was unconstitutional and whether the trial court properly characterized Code § 58.1-3703(C)(3) as a tax exemption statute.