# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 1, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **HBO DIRECT, INC.,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Davidson Chancery No. 97-1688-I |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 01A01-9804-CH-00221 |
| **RUTH E. JOHNSON, Commissioner of** | ) | |
| **Revenue, State of Tennessee,** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, CHANCELLOR

For the Plaintiff/Appellee:

Charles A. Trost
Michael G. Stewart
Nashville, Tennessee

Bernard Nash
Leslie R. Cohen
Laura B. Feigin
Appearing Pro Hac Vice
Washington, D.C.

For the Defendant/Appellant:

John Knox Walkup
Steven D. Thomas
Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

BEN H. CANTRELL, J.

WILLIAM C. KOCH, JR., J.

**OPINION**

This case involves a contest of Tennessee sales and use tax assessed by the defendant Tennessee Commissioner of Revenue. The plaintiff satellite programming television company argues that its services are not taxable telecommunications because, as "broadcast[s] . . . for public consumption," the satellite television services are excluded from the definition of taxable telecommunications. The trial court granted summary judgment in favor of the plaintiff satellite programming television company. The defendant Commissioner appeals. We affirm.

Plaintiff/Appellee HBO Direct, Inc. (HBO) provides direct-to-home television service to subscribers' homes through satellite technology. Its television programming services are transmitted by satellite to individual satellite dishes located at subscribers' residences. Subscribers make periodic payments for HBO's services and must have a satellite dish to receive the services. Nonsubscribers are prevented from receiving the services.

In 1997, the Defendant/Appellant Tennessee Commissioner of Revenue (Commissioner) audited HBO and issued a notice of assessment for sales and use tax for the period from August 1994 to November 1996. The notice of assessment was adjusted on July 25, 1997 for a total tax of $639,849. In addition, HBO was fined a penalty of $159,965 and interest of $88,555. The total deficiency therefore was $888,369.

The Commissioner assessed the taxes, penalty and interest pursuant to the Retailers' Sales Tax Act, which taxes, among other things, "telecommunications." *See* Tenn. Code Ann. §§ 67-6-101 to 67-6-713 (1998). Tennessee Code Annotated § 67-6-102(30) defines "telecommunications":

(A) "Telecommunication" means communication by electric or electronic transmission of impulses;

(B) "Telecommunications" includes transmission by or through any media, such as wires, cables, microwaves, radio waves, light waves, or any combination of those or similar media;

(C) Except as provided in subdivision (D), "telecommunications" includes, but is not limited to, all types of telecommunication transmissions, such as telephone service, telegraph service, telephone service sold by hotels or motels to their customers or to others, telephone service sold by colleges and universities to their students or to others, telephone service sold by hospitals to their patients or to others, WATS service, paging service, and cable television service sold to customers or to others by hotels or motels;

(D) "Telecommunications" does not include public pay telephone services, television or radio programs which are *broadcast over the airwaves for public consumption*, coaxial cable television (CATV) which is offered for public consumption, interstate WATS service, private line service, or automatic teller machine (ATM) service, wire transfer or other services provided by any corporation defined as a financial institution under § 67-4-804(a)(9), unless the company

separately bills or charges its customers for specific telecommunication services rendered;

Tenn. Code Ann. § 67-6-102(30)(A)-(D) (1998) (emphasis added). Thus, under subsection (D), television services that are "broadcast over the airways for public consumption" are not considered "telecommunications," and are therefore excluded from the taxes assessed pursuant to the Retailers' Sales Tax Act.

Several months after the Commissioner issued the original notice of assessment, HBO filed this lawsuit contesting the tax assessment. HBO filed a motion for summary judgment, arguing that its services are not "telecommunications" as defined in Tennessee Code Annotated § 67-6-102(30)(A)-(D), and therefore are not subject to the Tennessee sales and use tax. The Commissioner filed a motion for partial summary judgment arguing that HBO's services are "telecommunications" under the statute. On March 23, 1998, the trial court granted HBO's motion for summary judgment and denied the Commissioner's motion for partial summary judgment. From this order, the Commissioner now appeals.

The parties agree that the trial court's grant of summary judgment in favor of HBO must be based on an implicit finding that HBO's television programs are "broadcast over the airwaves for public consumption" within the meaning of Tennessee Code Annotated § 67-6-102(30)(D), and thus are not considered "telecommunications" which are subject to the sales and use tax. The Commissioner argues on appeal that the phrase "broadcast over the airwaves for public consumption" does not include services, such as HBO's satellite direct-to-home television services, for which consumers must pay and which require special equipment. HBO contends that the phrase "broadcast over the airwaves for public consumption" is not limited to free services, but also includes services such as those sold by HBO. Therefore, this case turns on whether the phrase "broadcast . . . for public consumption" in Tennessee Code Annotated § 67-6-102(30)(D) is limited to only television programming which is free to any consumer.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no

2

presumption of correctness regarding a trial court's grant of summary judgment. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

When interpreting a statute, the role of the Court is to "ascertain and give effect to the legislative intent." *Sharp v. Richardson*, 937 S.W.2d 846, 850 (Tenn. 1996). Unless the statute is ambiguous, legislative intent is derived from the face of a statute, and the court may not depart from the "natural and ordinary" meaning of the statute's language. *Davis v. Reagan*, 951 S.W.2d 766, 768 (Tenn. 1997); *Westland West Community Ass'n v. Knox County*, 948 S.W.2d 281, 283 (Tenn. 1997).

The Commissioner argues that HBO's services are not "broadcast . . . for public consumption" under the natural and ordinary meaning of the term "broadcast," and therefore are not excluded from the sales and use tax by Tennessee Code Annotated § 67-6-102(30)(D). The Commissioner notes that the term "broadcast" is not defined in the statute or its legislative history. The Commissioner contends that "broadcast" means "television services which are freely available to all listeners within the receiving area and excludes television services which are only available by subscription and require special decoding equipment in order to be received."

In support of its definition of "broadcast," the Commissioner cites the definition of "broadcast" utilized by the Federal Communications Commission (FCC). The FCC defines "broadcast" as the "transmission of radio communications intended to be received by the public, directly or by intermediary of relay stations" under Title III of the Communications Act of 1934. 47 U.S.C. § 153(o) (1994). The Commissioner also cites several cases for the proposition that if the entity transmitting the data uses a transmission technique that prevents a nonsubscriber from receiving the transmission, then it is not "intended to be received by the public" and is therefore not "broadcasting" within the meaning of the federal Communications Act. *See National Ass'n for Better Broad. (NABB) v. FCC*, 849 F.2d 665, 669 (D.C. Cir. 1988); *Intermountain Broad. & Television Corp. v. Idaho Microwave, Inc.*, 196 F. Supp. 315, 325 (D. Idaho 1961); *cf. Winchester TV Cable Co. v. State Tax Comm'r*, 217 S.E.2d 885, 889 (Va. 1971) (holding that a community antenna television provider is not "broadcasting" within the state's sales and use tax because its signals are only transmitted to paid subscribers).

The Tennessee Department of Revenue (the Department) has considered satellite television services in relation to the sales and use tax in several Letter Rulings involving satellite television services other than HBO. The Department originally found direct broadcast satellite television programming exempt from the sales and use tax, reasoning that these services were "broadcast . . . for public consumption" because, when the satellite signals are directed at individual homes, they are "intended to be received by [the] general public, despite the fact that [they] can be received by only those with appropriate reception equipment." Ltr. Rul. 92-15 (Dec. 8, 1992).

In 1994, the Department issued two Letter Rulings in which it reversed its position on direct satellite television programming. In Letter Ruling 94-13, dated June 9, 1994, the Department determined that a satellite programming service was not subject to tax pursuant to Tennessee Code Annotated § 67-6-212(a)(5), which taxes cable television services. *See* Ltr. Rul. 94-13 (June 9, 1994). The Department reasoned that the satellite services "d[id] not fit within the plain meaning of the statute because they transmit programming via microwave signals rather than cables." *Id.* In contrast, the Department found that satellite programming services were not exempt from Tennessee Code Annotated § 67-6-221, which taxes interstate telecommunication services. *See id.* In interpreting the exemption for services that are "broadcast . . . for public consumption," the Department looked to federal law defining "broadcasting" as that "intended to be received by the public." *Id.* The Department concluded that the satellite programming service

> would not be considered a "broadcaster" under the policy adopted by the FCC because it has manifested an intent to limit who can receive its signals. Similarly, . . . because [the satellite programming service] has taken active steps to exclude its programming from the non-subscribing public, its services are not "for public consumption" and therefore are not exempt from tax under [the exemption].

*Id.*

Letter Ruling 94-24, dated October 10, 1994, again interpreted the exemption for services "broadcast . . . for public consumption." *See* Ltr. Rul. 94-24 (Oct. 10, 1994). Once more, the Department considered federal law finding that scrambled programming, inaccessible without a decoder, and a contractual relationship between the subscriber and the satellite programmer shows an intent that the services are not "intended to be received by the public," and therefore are not "broadcasting." *See id.* Because the satellite programming services that were the subject of the letter ruling prevented non-subscribers from receiving their programming, the Department reasoned

4

that they were neither "broadcasters" nor "for public consumption," and therefore were not exempt from sales tax. *See id.*

The Commissioner, in this appeal and in the 1994 Department of Revenue letter rulings, relied on a federal statute which defines "broadcasting" as "the dissemination of radio communications intended to be received by the public, directly or by the intermediary of relay stations," as well as federal case law interpreting this definition. Communications Act of 1934, 47 U.S.C. § 153(o) (1994). In particular, the Commission cites *National Ass'n for Better Broadcasting (NABB) v. FCC*, 849 F.2d 665, 669 (D.C. Cir. 1988), which upheld the FCC's reinterpretation of the Communications Act of 1934 to define "broadcasting" as excluding transmission techniques which limit the reception of television programming to paid subscribers.

In *NABB*, the court reviewed some of the history of the definition of "broadcasting" as used in the federal Communications Act of 1934. The Communications Act gives the FCC broad authority to regulate television communications. *See NABB*, 849 F.2d at 666. It distinguishes between stations engaged in "broadcasting" and stations which provide fixed point-to-point services. *See id.* The Communications Act imposes particular restrictions only on stations that engage in "broadcasting," which is defined in the statute as the "dissemination of radio communications intended to be received by the public, directly or by the intermediary of relay stations." *Id.* (citing 47 U.S.C. § 153(o) (1982), § 3(o) of the Communications Act of 1934).

The Court in *NABB* noted that for many years the FCC interpreted the Communications Act by looking at whether the transmission was designed to appeal to mass audiences, determining that "broadcasting" did not occur when transmissions were of interest to only a limited number of listeners. *See id.* During this time period, the FCC stated that " 'broadcasting remains broadcasting even though a segment of the public is unable to receive programs without special equipment . . . .' " *Id.* at 667 (quoting *Further Notice in the Matter of Subscription Television Serv.*, 3 F.C.C.2d 1, 9-10 (1966)).

Subsequently, in light of changing technology, the FCC published a Notice of Proposed Rulemaking, changing its interpretation of the Communications Act and abandoning the focus on program content. *See id.* at 668. The FCC proposed to classify subscription video services "as point-to-multipoint nonbroadcast video services rather than as broadcasting." *Id.* at 668. Therefore, if the programmer intended for the signal to be received only by the subscribers and not by the

general public, the service would be reclassified as "point-to-multipoint" services rather than broadcasting. *See id.*

The court in *NABB* noted its standard of review of the FCC's determination, finding that the principle of deference to the agency's choice required that the FCC's new rule be upheld unless it was "arbitrary and capricious." *See id.* at 669. The *NABB* court found the new rule to be neither arbitrary nor capricious, and thus it was upheld. *See id.*

Thus, *NABB* involved a statutory definition of the term "broadcast" contained in a federal Act which regulated telecommunications, rather than taxing them. The federal court looked at whether direct broadcast satellite services constituted "broadcasting" or "point-to-multipoint" services. Given the statutory definition of broadcasting as "intended to be received by the public," the *NABB* court in actuality reviewed whether the FCC's revised interpretation, excluding services to paying subscribers, was consistent with the phrase "intended to be received by the public." Under the arbitrary and capricious standard, the FCC's new interpretation was upheld.

In contrast, this case involves a taxation statute with no statutory definition of the term "broadcast" and no classification such as "point-to-multipoint" for HBO's services. Unlike *NABB*, the term "broadcast" is modified by the phrase "for public consumption," and must be interpreted in light of that modifier.

The Commissioner also cites *Winchester TV Cable Company v. State Tax Commissioner*, 217 S.E.2d 885 (Va. 1975), for the proposition that the natural and ordinary meaning of the term "broadcast" does not encompass television services receivable only by paid subscribers. In *Winchester*, the issue before the court was whether a community antenna television (CATV) system was entitled to an exemption from the state's sales and use tax statute. *See id.* at 886. The CATV system in *Winchester* received television signals broadcast from distant commercial television stations and then boosted the strength of the signals before sending the amplified signals though cables to a subscriber's television set. *See id.* at 887.

In *Winchester*, the Virginia Retail Sales and Use Act provided an exemption from taxation for a "broadcaster" utilizing "broadcasting equipment" used by television companies which were "under the regulation and supervision of the Federal Communications Commission." *Id.* at 886-87. The statute did not define "broadcasting" and did not include a modifier such as "for public consumption" in the instant case. *See id.* at 889. Moreover, the Virginia statute referred directly to

6

entities regulated by the FCC. *See id.* at 887. Consequently, the *Winchester* court looked at federal courts interpreting federal law concerning broadcasters. *See id.* at 889-90 (citing *Teleprompter Corp. v. Columbia Broad. Sys., Inc.*, 415 U.S. 394, 94 S. Ct. 1129, 39 L. Ed. 2d 415 (1974) (holding that under the federal Copyright Act, a CATV system is not a "performer" of copyrighted broadcast programming and is also not a "broadcaster.")). *Winchester*, therefore interpreted a state statute which referred to FCC regulation and which utilized the term "broadcaster" without a modifier as in this case. The *Winchester* court concluded that CATV services were distinguishable from radio or television broadcasters because CATV services are not transmitted randomly or widely to the public. *See id.* at 889.

*Intermountain Broadcasting & Television Corp. v. Idaho Microwave, Inc.*, 196 F. Supp. 315 (D. Idaho 1961), cited by the Commissioner, also involved a community antenna service which received television signals and then transmitted them through coaxial cables to subscribers' television sets. The issue before the court was whether the antenna service, which received the television signals without the permission of the television stations, infringed on any interests of the television stations. *See id.* at 316. The *Intermountain* court noted, as background for its analysis of the infringement issue, that the FCC does not consider CATV services to be "broadcasts" within the meaning of the Federal Communications Act because CATV systems disseminate the broadcasts directly to their subscribers by means of microwave and cable, rather than "by radio communications intended to be received by the public." *Id.* at 323. Thus, while the *Intermountain* court mentions the FCC's determination that CATV services are not "broadcasts" under the federal statute, the issue is not that which is presented in this case and the analysis is inapplicable.

The statute at issue, Tennessee Code Annotated § 67-6-102(30)(D) exempts from sales and use tax: "television . . . programs which are broadcast over the airwaves for public consumption" and "coaxial cable television (CATV) which is offered for public consumption." Tenn. Code Ann. § 67-6-102(30)(D) (1998). It is undisputed that coaxial cable television services are not considered "telecommunications" under Section 67-6-102(30)(D) and thus are not taxed under the Retailers' Sales Tax Act. It is also undisputed that coaxial cable television is a fee-based service which non-subscribers are prevented from receiving. Thus, the phrase "for public consumption" as used in the exemption for CATV services clearly includes a fee-based service. It is a well settled rule of statutory construction that "the component parts of a statute should be construed, if practicable, so

7

that the parts are consistent and reasonable." ***Cohen v. Cohen***, 937 S.W.2d 823, 827 (Tenn. 1996). This is particularly important in construing language within the same sentence of a statute.

Given the fact that the statute exempts from the definition of telecommunications "coaxial cable television . . . offered for public consumption," a fee-based service, it would be incongruent to hold that the phrase immediately preceding this in the statute, "broadcast over the airwaves for public consumption," is limited to only broadcast services which are free to the public. In the context of the Tennessee statute, it is clear that the phrase "broadcast over the airwaves" refers to the manner in which the signal is disseminated, not to whether a fee must be paid for the service. This is consistent with the "natural and ordinary meaning" of the word "broadcast." ***See National Gas Distribs., Inc. v. State***, 804 S.W.2d 66, 67 (Tenn. 1991).

The Commissioner notes that coaxial cable television, excluding basic service, is "separately subject to the sales tax as an amusement service."[1] The Commissioner argues that holding that HBO's services are not taxable telecommunications under the Retailers' Sales Tax Act would result in HBO paying less tax than a coaxial cable television company and therefore having a competitive advantage over coaxial cable television. The Commissioner's interpretation, however, would result in sales tax assessed on basic services delivered by satellite but not by coaxial cable. Thus, consideration of the amusement tax does not indicate that the Tennessee legislature intended services such as HBO's to be considered taxable "telecommunications" under Tennessee Code Annotated § 67-6-102(30)(D).

Consequently, we conclude that HBO's services must be deemed "broadcast over the airwaves for public consumption" and therefore are not taxable "telecommunications" under Tennessee Code Annotated § 67-6-102(30)(D). Accordingly, the trial court's grant of summary judgment in favor of HBO is affirmed.

The decision of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

---

[1] T.C.A. § 67-6-212(a)(5) provides an amusement tax on "[f]ees for subscription to, access to or use of cable television services in excess of those charges made for the basic rate charged by the supplier of such services." Tenn. Code Ann. § 67-6--212(a)(5) (1998). Tennessee Sales and Use Tax Rule 1320-5-1-1.27 provides that "[b]asic cable television service" means a "a basic package of broadcast channels, local origination channels, advertiser supported channels, and access information channels or home shopping channels," while "[c]harges for pay-per-view, FM connection, program guide, remote control, premium channels, duplicate premium channels, and installation are in excess of the basic rates."

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**BEN H. CANTRELL, J.**


_____
**WILLIAM C. KOCH, JR., J.**