Ray F. SHARP, Jr. and Nell Sharp, Plaintiffs/Appellants,

v.

Greer E. RICHARDSON, M.D., Campbell Clinic, Inc., and Pfizer Hospital Products Group, Inc., Defendants/Appellees.

Supreme Court of Tennessee, at Jackson.

Sept. 16, 1996.

The Court of Appeals' judgment is reversed and the cause remanded to the trial court.

## *BACKGROUND*

For purposes of this appeal, the facts are not disputed. On May 24, 1984, plaintiff Ray Sharp sustained multiple injuries in an automobile-train accident in Memphis, Tennessee, including a severely comminuted fracture of the femur in his right leg. On June 11, 1984, defendant Dr. Greer E. Richardson, an orthopedic surgeon affiliated with defendant Campbell Clinic, performed surgery to repair the fracture and utilized a Gross–Kempf locking intermedullary rod, also called an intramedullary nail, which was manufactured by defendant Pfizer Hospital Products Group, Inc., (hereafter "Pfizer"). About three months later, Sharp began experiencing pain and was re-hospitalized. X-rays taken revealed that the intermedullary rod inserted into Sharp's femur had broken. On September 19, 1984, Campbell Clinic physicians other than Richardson performed a second surgery to remove and replace the broken rod. However, x-rays taken approximately six months later revealed that the new rod, also manufactured by Pfizer, had broken.

The plaintiffs, Ray and Nell Sharp, filed suit on August 6, 1985, alleging that Richardson and Campbell Clinic were liable for medical malpractice because Richardson failed to supply appropriate information regarding complications that could result from the use of the intramedullary rod and its failure rate, and because he failed to advise Sharp that he should remain non-weight bearing for a specified period of time. As to Pfizer, the complaint alleged that the corporation manufactured and distributed a product that was in a defective condition which rendered it unreasonably dangerous and unfit for the purposes for which it was intended. Plaintiffs therefore alleged strict products liability, breach of the warranty of fitness and merchantability, and failure to warn.

Everett B. Gibson, Everett B. Gibson Law Firm, Memphis, for appellants.

Buckner Wellford, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, for appellees, Greer E. Richardson, M.D. and Campbell Clinic, Inc.

Philip E. Mischke, Wyatt, Tarrant & Combs, Memphis, for appellee, Pfizer Hospital Products Group, Inc.

## OPINION

ANDERSON, Justice.

The dispositive issue in this appeal is whether the Tennessee savings statute [1] applies to save an action which was initially filed within the one-year products liability statute of limitations and the products liability statute of repose [2], but which was voluntarily dismissed and refiled beyond the six-year statute of repose. We hold that it does.

---

1. Tenn.Code Ann. § 28–1–105(a) (1980 & Supp. 1995).

2. Tenn.Code Ann. § 29–28–103(a) (1980).

Since the initial failure occurred on September 14, 1984, and suit was filed on August 6, 1985, it is undisputed that the plaintiffs initially filed the complaint within the one-year statute of limitations, the three-year medical malpractice statute of repose, and the six-year products liability statute of repose.

When the case finally came to trial, however, plaintiffs moved for a voluntary dismissal, which was granted without prejudice on April 3, 1991. Less than one year after the order of voluntary dismissal, the Sharps refiled their action on April 1, 1992, alleging the same claims of medical malpractice and products liability against the same defendants. They relied upon the Tennessee savings statute which provides that if an action is filed within the statute of limitations and a judgment of dismissal is entered on any ground not concluding the right of action, the action may be refiled within one year after the dismissal. Tenn.Code Ann. § 28–1–105(a) (1980 & Supp.1995).

The defendants responded by moving for summary judgment on the grounds that the refiled action was barred. Defendants Richardson and Campbell Clinic relied upon the three-year medical malpractice statute of repose, which provides that no medical malpractice action shall be brought more than three years after the date on which the negligent act occurred. Tenn.Code Ann. § 29–26–116(a)(3) (1980). Similarly, defendant Pfizer alleged that the plaintiffs' claims against it were barred by the products liability statute of repose, which requires actions to be brought within six years of the date of injury. Tenn.Code Ann. § 29–28–103(a) (1980).

The trial court denied the defendants' motions, but granted them permission to seek an interlocutory appeal. The Court of Appeals reversed the trial court's decision and dismissed the complaint, concluding that the savings statute does not "save" an action that was refiled beyond the applicable statute of repose. Thereafter, we granted the plaintiffs' permission to appeal and now reverse.

## MEDICAL MALPRACTICE STATUTE OF REPOSE

■ Our analysis of whether the savings statute saves an action refiled beyond the three-year medical malpractice statute of repose is governed by our recent decision in *Cronin v. Howe,* 906 S.W.2d 910 (Tenn.1995). In that case, we held that a plaintiff who initially files a medical malpractice action within the one-year statute of limitations and the three-year statute of repose can rely upon the savings statute and refile the action within one year of a voluntary dismissal, even though the voluntary dismissal and refiling occur beyond the three-year medical malpractice statute of repose. *Id.* at 915. Indeed, in this Court, defendants Richardson and Campbell Clinic concede that *Cronin,* which was decided during the pendency of their appeal, controls the disposition of this case and requires a reversal of the Court of Appeals' decision dismissing the plaintiffs claim for medical malpractice.

It is undisputed that in this case, the plaintiffs initially filed suit within both the medical malpractice one-year statute of limitations and the three-year medical malpractice statute of repose. It is also undisputed that the suit was voluntarily dismissed without prejudice, and that the suit was refiled within one year of the voluntary dismissal. Accordingly, it is clear that under *Cronin,* the plaintiffs' second suit was timely filed under the savings statute, even though it was refiled beyond the statute of repose. We, therefore, reverse the Court of Appeals' judgment dismissing the plaintiffs' medical malpractice claims.

## PRODUCTS LIABILITY STATUTE OF REPOSE

■ We are asked to answer a different but analogous question—one of first impression—whether the savings statute applies to save an action that is timely filed within both the products liability statute of limitations and statute of repose, but refiled beyond the six-year statute of repose. To resolve this issue, we must examine the express language of both the products liability statute of repose and the savings statute, as well as their underlying purposes. In performing this

analysis, we observe and apply the familiar rules of statutory construction as follows:

> The role of this Court in construing statutes is to ascertain and give effect to the legislative intent.... A construction which places one statute in conflict with another must be avoided; therefore, we must resolve any possible conflict between statutes in favor of each other, so as to provide a harmonious operation of the laws.

*Id.* at 912 (citations omitted).

The products liability statute of repose provides as follows:

> Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, *but notwithstanding any exceptions to these provisions* it must be brought within six years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner.

Tenn.Code Ann. § 29–28–103(a) (1980 & Supp.1995) (emphasis added).

The express language of the savings statute provides that:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Tenn.Code Ann. § 28–1–105(a) (1980 & Supp. 1995).

In this Court, Pfizer argues that unlike the medical malpractice statute of repose, the plain language of the products liability statute of repose, "notwithstanding any exceptions to these provisions," specifically excludes exceptions to the statute of limitations, like the savings statute. In addition, according to Pfizer, the language necessarily includes the savings statute as an exception because the savings statute was enacted prior to the products liability statute of repose, and the Legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *Wilson v. Johnson County,* 879 S.W.2d 807, 809 (Tenn.1994). Pfizer, therefore, contends that the plaintiffs' action is barred since it was refiled almost eight years after the injury occurred.

Plaintiffs, on the other hand, contend that the savings statute is not encompassed within the term "exception" used in the statute of repose because a litigant cannot avail himself or herself of the benefits of the savings statute unless he or she first files the action within "the time limited by a rule or statute of limitation."

█ As we observed in *Cronin,* the Tennessee savings statute is remedial and was enacted to afford a *diligent* plaintiff the opportunity to renew a suit that was dismissed without concluding the plaintiff's right of action. *Id.* at 912, (*citing Dukes v. Montgomery County Nursing Home,* 639 S.W.2d 910, 913 (Tenn.1982) (emphasis added)). Indeed, we said many years ago that

> [t]he statute has not merely letter but a spirit. That spirit is manifested in the history of the statute.... It is that a plaintiff shall not be finally cast out by the force of any judgment or decree whatsoever, not concluding his right of action, without an opportunity to sue again within the brief period limited.

*Nashville, C & St. L. Ry. v. Bolton,* 134 Tenn. 447, 184 S.W. 9, 11 (1916). Accordingly, the statute has long been liberally construed in order to bring cases within its spirit and fair intention. *Cronin,* 906 S.W.2d at 913.

In contrast to the long history of the savings statute, the products liability statute of repose was enacted in 1978 as part of a comprehensive legislative package. The stated purpose of the products liability statute of repose was to provide a "specific period of time for which product liability insurance premiums can be reasonably and accurately calculated." Tenn. Public Acts 1978, ch. 703, § 1. In other words, the products liability statute of repose was designed to limit the time within which a suit alleging products liability may be brought and thereby address the actuarial concerns of the insurance industry and allow for accurate assessment of liability exposure for insurance purposes. The six-year limit here was intended by the Legislature to provide certainty as to the time period during which product manufacturers and sellers could be subject to potential liability.

■ The role of the Court in construing statutes is to ascertain and give effect to the legislative intent. 906 S.W.2d at 912. Whenever possible, courts should avoid conflict between statutes and construe them harmoniously. *Id.* If this Court were to adopt Pfizer's position, the purpose of the savings statute would be frustrated and such a construction would amount to a repeal by implication, which is disfavored. *See Jenkins v. Loudon County,* 736 S.W.2d 603 (Tenn.1987). Although, as Pfizer suggests, the Legislature is presumed to have knowledge of its prior enactments, repeals or alterations of existing statutes by implication is disfavored. *Id.* If the Legislature had intended the "exceptions" language in the products liability statute of repose to supersede the longstanding savings statute, it could have explicitly stated its intention. In the absence of specific language stating its intention to supersede the savings statute, we will not presume a repeal.

As we explained in *Cronin,* this Court will avoid constructions that place one statute in conflict with another and attempt to arrive at a reasonable interpretation that will effectuate the intention of the Legislature, as well as provide for harmonious operation of the laws. 906 S.W.2d at 912 (citations omitted).

Because the plaintiffs initially filed their products liability action on August 6, 1985, within the statute of limitations, as well as within the period of six years from the date of injury, they complied with the letter of the products liability statute of repose and fulfilled its legislative purpose—to limit the time period during which a manufacturer is subject to a claim of potential liability. Since the plaintiff's suit was "commenced within the time limited by a rule or statute of limitation," and was concluded by an order of voluntarily dismissal without prejudice, its refiling was within the express terms and longstanding purpose and spirit of the savings statute—to provide a diligent plaintiff with an opportunity to renew a suit that is dismissed by any judgment or decree that does not conclude the right of action. Therefore, application of the savings statute in this case does not conflict nor frustrate either the letter or purpose of the products liability statute of repose.

Accordingly, we conclude that where, as here, a products liability action is timely filed within both the statute of limitations and the statute of repose, a plaintiff who voluntarily non-suits the initial action may rely upon the savings statute and refile within one year of the non-suit, even if the non-suit and refiling occur beyond the six-year statute of repose.

### CONCLUSION

Because we conclude that the savings statute applies to the plaintiffs' claims of medical malpractice and products liability, the judgment of the Court of Appeals granting the defendants' motions for summary judgment is reversed. The cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed equally between the defendants Greer E. Richardson, M.D., Campbell Clinic, Inc., and Pfizer Hospital Products Group, Inc., for which execution may issue if necessary.

BIRCH, C.J., and DROWOTA, REID and WHITE, JJ., concur.