IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2016 Session

**STATE OF TENNESSEE v. COREY FOREST**

**Appeal from the Circuit Court for Maury County**
**No. 24034    Robert Jones, Judge**

_____

**No. M2016-00463-CCA-R3-CD – Filed January 31, 2017**

_____

The Defendant, Corey Forest, was indicted for possession of twenty-six grams of cocaine with the intent to sell in a drug-free school zone, possession of marijuana, and unlawful possession of a firearm. The Defendant filed a pretrial motion to suppress the warrantless search of his vehicle. The trial court denied the Defendant's motion, and the Defendant pleaded guilty to the lesser-included offense of possession of more than .5 grams of a Schedule II substance and to unlawful possession of a firearm, and attempted to reserve a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) about whether the stop of the Defendant's vehicle by law enforcement was lawful. After review, because the Defendant has failed to properly comply with Rule 37, we dismiss the Defendant's appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Corey Forest.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Brent A. Cooper, District Attorney General; and Gary M. Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

This case arises from the stop of the Defendant's vehicle on April 8, 2014, and the subsequent search of the Defendant's vehicle during which law enforcement officers

found cocaine, marijuana, and a handgun.

Before trial, the Defendant filed a motion to suppress, contending, among oter things, that the City of Columbia police officer lacked jurisdiction to act outside the City of Columbia, that police officers illegally stopped his vehicle, and that any evidence derived from the subsequent search of his vehicle should be suppressed. At the hearing on the motion, the following evidence was presented: Officer Neylan Barber testified that he worked for the Columbia Police Department and that he stopped the Defendant's vehicle for speeding on April 18, 2014. Officer Barber stated that he was following the Defendant's vehicle as part of a drug investigation. The narcotics task force believed that drugs were being sold at an apartment complex, and the police were monitoring a residence at the apartment complex for the two days leading up to the stop of the Defendant's vehicle. Investigators observed the Defendant at the residence and, each time he left the residence, the amount of traffic at the residence would increase. Investigators also observed the Defendant's vehicle at the apartment complex on multiple occasions and, on each occasion, there was "increased traffic" coming and going from the complex. The narcotics task force eventually received confirmation that narcotics were being sold from the particular residence the Defendant frequented over those two days.

Officer Barber followed the Defendant's vehicle from the apartment complex, at the direction of Lieutenant James Shannon from the narcotics task force. He observed the Defendant speeding and initiated a traffic stop at approximately 10:15 p.m., and a recording of the stop was played for the trial court. Officer Barber testified that he observed the Defendant's vehicle traveling 60 miles per hour in 55 mile per hour and 50 mile per hour speed zones. The Defendant provided Officer Barber with a driver's license and proof of insurance but was unable to provide his registration at that time.

Officer Barber testified that the Defendant also provided him with a handgun carry permit. When the Defendant took the permit and driver's license out of his wallet, Officer Barber observed what appeared to be a "couple hundred dollars" in twenty dollar bills in the Defendant's wallet. Officer Barber described how, as shown in the video, he left the Defendant's vehicle and returned to his police vehicle to run the Defendant's license through the NCIC database and through the Tennessee State Portal system to check for outstanding warrants. Officer Barber then returned to the Defendant's vehicle at 10:22 p.m. to get the Defendant's registration from him. Another officer arrived at the scene at 10:23 p.m. Officer Barber stated that the Defendant said he had just come from a restaurant, which Officer Barber knew to be untrue because he had followed the Defendant from a "known drug house" at the apartment complex.

Officer Barber asked for consent to search the Defendant's vehicle. He suspected

2

that the Defendant was in possession of illegal narcotics based on the following facts: the residence the Defendant came from, the amount of money in his wallet, his frequenting the residence often over the course of the two-day period and the subsequent increase in traffic to and from the residence, and the Defendant lying about where he had come from when he was stopped. The Defendant refused to consent to a search and Officer Barber informed him that a K-9 officer (narcotic drug dog) was going to perform a search around his vehicle to check for illegal narcotics. At this point, Officer Barber had not written a speeding citation for the Defendant. The K-9 officer indicated the presence of drugs in the Defendant's vehicle and a subsequent search of the vehicle revealed five bags of cocaine present inside, totaling 30.92 grams of cocaine. The cocaine was found inside the sunroof enclosure.

On cross-examination, Officer Barber clarified that he began following the Defendant at the apartment complex, which was located near Columbia State Community College. Officer Barber had been participating in surveillance of this apartment complex for two days prior and observed increased foot traffic to and from the complex while the Defendant's vehicle was present. He agreed that he did not observe any drug transactions. Lieutenant Shannon instructed Officer Barber to follow the Defendant from the apartment complex and "find a traffic stop" on him. Officer Barber testified that he left the Columbia city limit in Maury County at some point while he was following the Defendant. Officer Barber testified that he was less than a mile from crossing the Maury County line into Lawrence County when he activated his emergency lights.

Officer Barber stated that he measured the Defendant's speed by "pacing" his vehicle, gauging the Defendant's vehicle's speed against his own. Officer Barber stated that he stopped the Defendant's vehicle with no intention of writing him a speeding ticket, and that it was a "pre-textual stop" based on Officer Barber's belief that the Defendant's vehicle contained illegal narcotics. When he stopped the Defendant's vehicle, Officer Barber knew that the K-9 officer was en route to the scene. Officer Barber agreed that, before he stopped the Defendant, he received a radio transmission that told him that the Defendant's driver's license was "clear," but no mention was made about the Defendant's registration or whether he had any outstanding warrants.

Officer Barber agreed that when the K-9 arrived at the scene, he "abandoned" the pretext of writing the Defendant a speeding ticket and furthered the investigation into the narcotics instead. Officer Barber clarified that the residence in the apartment complex where the Defendant was seen coming and going was a "known drug house" because multiple vehicles driven by people leaving the residence were stopped and had drugs inside.

On redirect-examination, Officer Barber stated that he was "confident" that the Defendant was traveling 60 miles per hour in a 50 mile per hour zone when Officer Barber stopped his vehicle.

The trial court questioned Officer Barber, and he clarified that multiple police vehicles were following the Defendant's vehicle in a "leapfrogging" maneuver, so he would not become suspicious. Officer Barber agreed that the Lawrence County sign was not far from where he stopped the Defendant.

Trooper Michael Kilpatrick testified that he worked for the Tennessee Highway Patrol and that his K-9 performed a drug sniff on the Defendant's vehicle. Trooper Kilpatrick testified that he received the call to bring the K-9 to the traffic stop before the Defendant's vehicle was actually stopped. He was on the scene for less than a minute before the K-9 drug sniff was performed.

On cross-examination, Trooper Kilpatrick stated that he was not sure how long it took him to arrive at the scene after he received the call to assist. He denied that other officers were "waiting around" for him; he stated Officer Barber and the Defendant were "conducting business" when he arrived.

On redirect-examination, Trooper Kilpatrick stated that he received the call to assist in a traffic stop of the Defendant's vehicle "in case" a stop was made. He denied that there was any "definiteness" to the call.

The trial court questioned Officer Barber further about the traffic stop. Officer Barber stated that he had the paperwork available to write the Defendant a speeding ticket but that he gave him a warning to slow down in order to be "lenient" on him. The trial court then stated the following:

> The Court does find this is the most extreme example of a pre-textual stop that this Judge has ever seen where an officer in a marked car along with one or two additional city officers follows the suspect 15 or 20 miles beyond the municipal limits of the City of Columbia and finally stops the car within a quarter of a mile of leaving the county. And I've had a case where an off-duty officer stopped a car north of Pulaski when that officer was maybe on his way home. But it was a car weaving all over the road, a DUI stop, and one that did result in an arrest.
>
> . . . .

4

The Court noted in the video that the vehicle was stopped at about [10:17 p.m.]. That the dog arrives at the driver's side of the vehicle at [10:26 p.m.]. . . . But you can actually see [Trooper Kilpatrick] and the dog within nine minutes or so after the stop. There is less expectation of privacy in a vehicle situation. And as the State argues, the Court's not impressed with the separate indicia of suspicion relied upon by Officer Barber, but may be taken together along with what he knew about the Columbia [apartment complex] residence and other circumstances. The nine minute period of detention [of the Defendant] was not unreasonable.

Again, it's a borderline case, because the Court is not impressed with the [drug] dog's conduct in indicating any sort of certainty of [drug] scent. . . . The Court finds that Tennessee cases would permit it and that [*Rodriguez v. U.S.*, 135 S.Ct. 1609 (2015)] does not seem to prohibit such officer conduct. Therefore, the Court finds the period of detention was reasonable and not constitutionally defective under both the State and Federal Constitutions. But like I say, it's the most extreme pre-textual stop I've ever seen.

The trial court denied the Defendant's motion to suppress. Thereafter, the Defendant offered a plea of guilty to possession .5 grams or more of a Schedule II substance and to unlawful possession of a firearm and attempted to reserve a certified question of law about the propriety of the stop of his vehicle. The trial court entered the plea and sentenced the Defendant to eleven years of incarceration. In an agreed upon order, the Defendant attempted to reserve for appeal the following certified questions of law:

1. Was there a constitutionally permissible basis for the initial stop of the Defendant's vehicle?

2. Did the dog sniff impermissibly prolong the stop?

Both parties agree that the certified questions of law are dispositive of the case.

## II. Analysis

### A. Certified Question of Law

The State contends that the Defendant's appeal should be dismissed because his certified questions of law are "overbroad and non-specific." The State argues that the

Defendant "fails to identify the specific constitutional violations and makes no mention of any specific factual allegations concerning his case" and complains that his certified questions make no mention of "citizen arrest, probable cause, the basis for the stop, [or] pre-textual stops." The Defendant failed to file a reply brief to address these State arguments.

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment or conviction occurring as the result of a guilty plea. *State v. Long*, 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *State v. Preston*, our supreme court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)." 759 S.W.2d 647, 650 (Tenn. 1988). First, the final order or judgment appealed from must contain a statement of the dispositive question of law reserved for review. *Id.* The question must clearly identify the scope and limits of the legal issue and must have been passed upon by the trial judge. *Id.* Second, the order must also state that: (1) the certified question was reserved as part of the plea agreement; (2) the State and the trial judge consented to the reservation; and (3) both the State and the trial judge agreed that the question is dispositive of the case. *Id.* Third, the defendant bears the burden of "reserving, articulating, and identifying the issue" reserved. *State v. Troy Lynn Woodlee*, No. M2008-01100-CCA-R3-CD, 2010 WL 27883, at *2 (Tenn.

Crim. App., at Nashville, Jan. 6, 2010), *perm. app. denied* (Tenn. May 20, 2010) (citing *Preston*, 937 S.W.2d at 838). Failure to properly reserve a certified question of law pursuant to the requirements stated in *Preston* will result in the dismissal of the appeal. *Troy Lynn Woodlee*, 2010 WL 27883, at \*2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)). The importance of complying with the *Preston* requirements has been reiterated by our supreme court in *State v. Armstrong*, 126 S.W.3d 908, 913 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37.

The issues reserved by the Defendant in this case are: (1) Was there a constitutionally permissible basis for the initial stop of the Defendant's vehicle? and (2) Did the dog sniff impermissibly prolong the stop?

The Defendant's purported certified question does not clearly identify the "scope and limits of the legal issue." *State v. Long*, 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). Our supreme court has cautioned us regarding questions of law of this kind, stating that in "questions of law involv[ing] the validity of searches and the admissibility of [evidence], the reasons relied upon by the defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law. . . ." *Preston*, 759 S.W.2d at 650. Here, the Defendant's certified questions of law neither state the reasons the Defendant is entitled to relief nor state what evidence the Defendant is seeking to suppress. Indeed, the questions as posed do not even state the legal basis for suppression. This Court has previously held that certified questions of law that fail to narrowly construe the issues and identify the trial court's holding do not provide an adequate basis for our review. *See State v. Casey Treat*, No. E2010-02330-CCA-R3-CD, 2011 WL 5620804, at \*5 (Tenn. Crim. App., at Knoxville, Nov. 18, 2011) (holding that a certified question that did not "articulate the reasons previously relied upon by the Defendant in support of his arguments [and did] not describe the trial court's holdings on the constitutional issues presented" was overly broad), *no Tenn. R. App. P. 11 filed*; *State v. Bradley Hawks*, No. W2008-02657-CCA-R3-CD, 2010 WL 597066, at \*5 (Tenn. Crim. App., at Jackson, Feb. 19, 2010) (holding that the certified question was overly broad because it did not specify what police action rendered the search and arrest unconstitutional, and did not adequately set forth the legal basis for the claim), *perm. app. denied* (Tenn. June 16, 2010); *see also State v. Tobias Toby Horton and Latonya Lynn Townsend*, No. W2008-01170-CCA-R3-CD, 2009 WL 2486173, at \*4 (Tenn. Crim. App., at Jackson, Aug. 13, 2009) (holding that the certified question was framed too broadly such that the appeal court would have to conduct a complete overview of search and seizure law to answer it, which the court declined to do), *perm. app. denied* (Tenn. Dec. 14, 2009).

Thus, we conclude that the Defendant's certified questions of law are overly broad and fail to clearly identify the issue preserved for appeal, as well as the scope and limits of the issue. As such, we lack jurisdiction to address the merits of the Defendant's claim because his certified questions of law were not properly reserved. *Pendergrass*, 937 S.W.2d at 837. We reiterate that we take no satisfaction in the dismissal of this or the many other failed Rule 37 appeals; however, we cannot assume jurisdiction when it is denied due to failures in meeting the strict prerequisites of *Preston. See Armstrong*, 126 S.W.3d at 912.

## III. Conclusion

After a thorough review of the evidence and relevant authorities, we conclude that the proposed certified questions were not properly reserved. Accordingly, we dismiss the Defendant's appeal.

_____
ROBERT W. WEDEMEYER, JUDGE

8