IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2019

## STATE OF TENNESSEE v. BREWSTON COLE

**Appeal from the Circuit Court for Gibson County**
No. H10101            Clayburn Peeples, Judge

_____

#### No. W2019-00245-CCA-R3-CD

_____

The Defendant, Brewston Cole, pleaded guilty to possession of over .5 grams of a Schedule VI controlled substance with the intent to sell, and the trial court sentenced him to a two-year term of supervised probation. The Defendant reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the warrantless search of the Defendant's vehicle was lawful based on the length of the traffic stop. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and J. ROSS DYER, JJ., joined.

W. Taylor Hughes, Alamo, Tennessee, for the appellant, Brewston Cole.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Garry G. Brown, District Attorney General; Scott Rich and Jason Scott, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION
### I.   Facts

This case arises from a Humboldt police officer's pulling over the Defendant for speeding in a convertible sedan. The officer asked for the Defendant's proof of insurance, which the Defendant stated he did not have. While speaking with the Defendant, the officer detected the odor of marijuana and searched the vehicle, during which he discovered a plastic bag containing marijuana under the passenger's seat. Law enforcement later procured a search warrant for the vehicle and found a semi-automatic weapon under the driver's seat. For this conduct, a Gibson County grand jury indicted the Defendant for possession of more than .5 ounces of a Schedule VI controlled substance with the intent to sell, possession of a firearm by a convicted felon, possession of a firearm

during the commission of a dangerous felony, speeding, and failure to provide proof of insurance.

## A. Motion to Suppress

The Defendant filed a motion to suppress the evidence obtained during the search of his vehicle, contending that the stop of his vehicle lasted longer than necessary to effectuate the purpose of the stop.

The trial court held a hearing on the Defendant's motion, during which the following evidence was presented: Officer Tony Barr of the Humboldt Police Department testified that he stopped the Defendant's vehicle on April 8, 2017, after he observed the vehicle traveling seventy-five miles per hour in a fifty-five miles per hour speed zone. He recalled that the Defendant was driving a Ford Mustang convertible with two passengers inside. After stopping the Defendant's vehicle, Officer Barr spoke with the Defendant and checked his driver's license; the Defendant did not possess proof of insurance. Officer Barr detected the odor of marijuana and asked the Defendant and his passengers if they had been smoking marijuana, which they denied. Officer Barr then wrote a citation for the Defendant at his police vehicle. When he returned to the Defendant's vehicle, Officer Barr believed that he recognized the passenger as an individual with a warrant out for his arrest. The passenger gave Officer Barr a false name; it was later determined that his name was Griffin Cole. Officer Barr walked around the vehicle and again smelled the odor of marijuana.

Officer Barr clarified that, after the passenger gave him a false name, Officer Barr ran that false name through the computer in his police vehicle, and his search yielded no results. However, Officer Barr believed that the passenger had not been telling the truth about his name, and Officer Barr challenged him on his truthfulness; during their conversation, Officer Barr "could really smell the odor of marijuana" on the passenger side of the car. At some point during Officer Barr's interaction with the three men, the backseat passenger, Griffin Cole, jumped out of the car and fled the scene after resisting the officer's attempt to arrest him. He was later arrested on the outstanding warrants.

A subsequent search of the Defendant's vehicle uncovered a plastic bag under the front passenger seat containing 244 grams of marijuana. Later, investigators obtained a search warrant and recovered a .380 caliber semi-automatic weapon from the vehicle.

On cross-examination, Officer Barr agreed that he recorded his stop of the Defendant's vehicle. He reiterated that the purpose of stopping the Defendant's vehicle was for speeding. He wrote the Defendant a citation for failure to provide proof of insurance and, after smelling marijuana, asked the Defendant and his passengers if they

2

had been smoking.   He clarified that this question was asked before he wrote the citation.

At this point, the Defendant sought to introduce the video recording of the stop. The trial court asked for an oral recitation of what was shown in the video, and the Defendant summarized its content as follows:

> Your Honor, the video is going to show that at approximately [4:05 p.m.] on the body cam that is when the stop took place and that is when [Officer Barr] initiated blue lights and he went up to the car and told [the Defendant] that he, in fact, was speeding and once he said, "Alright, I'll be right with you," and gave the driver's license back, went back to his [police vehicle] there was no mention of marijuana, no mention of anything other than speeding and [the Defendant] couldn't provide the proof of insurance and it took about [ten] minutes.   When [Officer Barr] came back with the citation he gave the citation to [the Defendant], had him sign it . . . and then at [that] point he goes, "Hang on just a minute.   I've got some business with your friend in the back," and he started talking to the guy in the back [Griffin Cole] and [he] did not have his identification.   [Officer Barr] asked him a few questions about why he didn't have his identification or didn't have any ID on him and then he went back . . . to the [police vehicle] at that point to [check] [Griffin Cole's] information in the system that he gave to [Officer Barr] and at that point then [Officer Barr] went back to the passenger side of the [Defendant's vehicle] and at that time [Officer Barr] started talking again.   He was a little closer and this is a convertible.   The top was down the entire time.   He went back and talked to the passenger that was in the back seat a little bit and [at] that point he . . . asked for consent to search and after [the Defendant] didn't give [Officer Barr] consent to search then he said, "Well, I smell marijuana and that gives me probable cause to search the car," and then that's when [the Defendant] said, "No, I'm not giving you permission to search the car," and they argue about it some.   There was a little back and forth banter and [the Defendant] gets out of the car and starts walking down the street and . . . the front passenger was taken to [Officer Barr's] police car and the back seat passenger, [Griffin Cole], took off down the road as well.

The Defendant stated that the video recording showed that there was no mention of marijuana odor until after the traffic stop took place.   The State agreed that this version of events was contained in the video recording.

Officer Barr continued with his testimony, stating that the traffic stop lasted approximately ten minutes.   He clarified that, before the Defendant signed the citation,

3

Officer Barr asked about the identity of the back seat passenger, and he gave the false name. Officer Barr knew it was a false name because he recognized the individual from a warrant photo in the "squad room" at the police department. After Officer Barr gave the citation to the Defendant, he walked around the passenger's side of the car and began speaking with Griffin Cole. He conceded that, at that point, the traffic stop for speeding was complete.

At the conclusion of the hearing, the trial court denied the Defendant's motion, stating that Officer Barr was permitted to detain the Defendant's vehicle to explore Officer Barr's reasonable suspicion that there were drugs inside the vehicle. Thereafter, the Defendant entered a guilty plea to possession of over .5 grams of a Schedule VI controlled substance with the intent to sell. The remaining charges were dismissed. The Defendant sought to reserve the following certified question of law:

> Whether evidence of a Schedule VI contraband and a firearm found in a vehicle should be suppressed under both Article 1 § 7 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution when the Officer conducted a warrantless search of an automobile without consent of the Defendant or passengers after the Officer had already issued a citation to the driver and explained to the Defendant the process to pay the traffic citation or appear in Court, and after the Defendant signed the citation, the officer would not let the [D]efendant leave while the officer questioned other individuals in the vehicle and then subsequently searched the vehicle based upon the assertion of probable cause of smelling marijuana.

Thereafter, the trial court entered the judgment incorporating the above certified question of law and sentenced the Defendant to two years of supervised probation.

## II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this Court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This Court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State*

4

*v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)).   This Court must make an independent determination that the certified question is dispositive.  *Id.* at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)).   Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment or conviction occurring as the result of a guilty plea.  *State v. Long* 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004).   The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *Preston*, our supreme court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)."   759 S.W.2d at 650.   Failure to properly reserve a certified question of law pursuant to the requirements stated in *Preston* will result in the dismissal of the appeal.  *Woodlee*, 2010 WL 27883, at *2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)).   The importance of complying with the *Preston* requirements has been reiterated by our supreme court in *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37.  *Id.* at 912.

In the case under submission, the Defendant's issue on appeal meets these requirements: he entered a plea of guilt; the judgment form incorporates the certified question; and the certified question is stated so as to identify clearly the scope and limits of the legal issue reserved and is dispositive of the case.   Thus, we conclude that the issue is properly before this court.

## B. Legality of the Search

The Defendant contends that the warrantless search of his vehicle was unconstitutional because the traffic stop that led to the search lasted longer than necessary and that the subsequent detention of the vehicle was illegal. The State replies that the evidence shows that Officer Barr began questioning the passenger about his identity before returning the Defendant's traffic citation, following which he developed reasonable suspicion that the vehicle contained marijuana. The State contends that Officer Barr developed his reasonable suspicion regarding the drugs and that Griffin Cole had outstanding warrants prior to resolving the traffic stop for speeding and lack of insurance, which warranted the initial detention. For these reasons, the State claims that the trial court properly denied the Defendant's motion to suppress. We agree with the State.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. This Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23.

We begin our analysis with the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Similarly, article I, section 7 of the Tennessee Constitution provides:

> [P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without

6

evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and not to be granted.

Tenn. Const. art. I, § 7. Under these provisions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result of such a search or seizure should be suppressed unless the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

One such exception to the warrant requirement occurs when a police officer conducts a stop of an automobile based upon a reasonable suspicion or probable cause to believe that a traffic violation has occurred. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997); *State v. Willie Norman*, No. W2003-02067-CCA-R3-CD, 2004 WL 2255253, at *6 (Tenn. Crim. App., at Jackson, Oct. 7, 2004), *no perm. app. filed* (holding that a police officer had reasonable suspicion to stop a defendant because the defendant ran a stop sign and had his music playing "extremely loud"). A police officer may stop a vehicle if the officer has probable cause, or a reasonable suspicion supported by specific and articulable facts, to believe that an offense has been or is about to be committed. *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000). In *Whren v. United States*, the United States Supreme Court held that where an officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if it is a complete pretext for the officer's subjective motivations in making the stop. 517 U.S. 806, 813-14 (1996); *See also Vineyard*, 958 S.W.2d at 734.

A police officer's actions after conducting a stop must reasonably relate to the circumstances which justified the stop in the first place. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968). The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. *Id.* In determining the reasonableness of the detention, the proper inquiry is whether, during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel his or her suspicions quickly. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into an impermissible stop. *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002). If the officer develops a reasonable suspicion that the occupant is engaged in other criminal activity during a valid stop, further detention is justified. *State v. Branden Haney and Lawrence Davis*, No. E2002-00559-CCA-R3-CD, 2003 WL 22169708, at *5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2003). The reviewing court considers the totality of the circumstances to

determine whether police officers had reasonable suspicion to expand the scope of a traffic stop. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

As the State points out, "an officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure so long as those inquiries do not measurably extend the duration of the stop." *See Muehler v. Mena*, 544 U.S. 93, 100-01 (2005).

The evidence does not preponderate against the trial court's findings that the officer had reasonable suspicion that developed during the duration of the traffic stop sufficient to permit the prolonging of the traffic stop to inquire into other matters, specifically whether the passenger in the Defendant's vehicle had an outstanding warrant for his arrest and later the odor of marijuana. It is clear that Officer Barr had probable cause to make a traffic stop due to the vehicle's exceeding the speed limit. After pulling the vehicle over, and while issuing a citation to the Defendant for failure to provide insurance, the officer developed reasonable suspicion that one of the passengers had a warrant for his arrest. While in the process of issuing the citation, the officer attempted to determine the passenger's identity, and, based on his suspicion that the passenger was being untruthful about the same, continued his discussion with the passenger following his completion of the citation. During this discussion, the officer detected the odor of marijuana.

The duration of this stop was approximately ten minutes and encompassed not only investigation related to the initial traffic stop, but Officer Barr's reasonable suspicion that the Defendant and his passenger were engaged in other criminal activity warranting further detention. Based upon the facts of this case, Officer Barr had the requisite reasonable suspicion to conduct the traffic stop. Further, we cannot conclude that the length of the detention was excessive. Accordingly, the trial court did not err when it denied the Defendant's motion to suppress. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE