IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 8, 2020 Session

**STATE OF TENNESSEE v. NONA KILGORE**

**Appeal from the Circuit Court for Grundy County**
**No. 5959        J. Curtis Smith, Judge**

_____

**No. M2020-00353-CCA-R3-CD**

_____

The Defendant, Nona Kilgore, pleaded guilty to possession of a schedule IV controlled substance with intent to sell or deliver.  The Defendant reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the warrantless search of the Defendant's home was lawful based on the issue of consent. After a thorough review of the record and relevant authorities, we conclude that the reserved question of law is not dispositive of the case and, accordingly, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Roger D. Layne, Chattanooga, Tennessee, for the appellant, Nona Kilgore.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; J. Michael Taylor, District Attorney General; and David O. McGovern, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.   Facts**

This case arises from the search of the Defendant's residence by the 12th Judicial District Task Force.   Based on text messages exchanged with another suspect in their drug investigation, deputies arrived at the Defendant's home and asked to search her residence. The Defendant gave consent and also produced 200 Xanax pills which deputies believed were laced with fentanyl.  The Defendant signed a consent to search form.  Based on these events, a Grundy County grand jury indicted the Defendant for possession of a

1

schedule IV controlled substance with the intent to sell or deliver.

## A. Motion to Suppress

The Defendant filed a motion to suppress the evidence obtained during the search of her residence, contending that her consent to search was not voluntarily given.

The trial court held a hearing on the Defendant's motion, during which the following evidence was presented: Chad Johnson testified that he was employed by the Marion County Sheriff's Office and assigned to the Drug Task Force. At the time of the search of the Defendant's residence, which occurred on July 25, 2017, Detective Johnson had been a part of an ongoing investigation regarding the production and distribution of fentanyl-laced prescription pills. The pills were made to look like Xanax or Oxycodone but contained the addictive fentanyl drug. The Defendant's name had arisen in interviews with suspects throughout his investigation. One of the suspects had agreed to arrange a meeting with the Defendant, which Detective Johnson recorded, and during which the Defendant stated that she was providing large amounts of pills to an individual named Anthony Leiderman.

Another agent on the Drug Task Force, Cody Smith, obtained a search warrant for Mr. Leiderman's residence. During the execution of that warrant, Detective Johnson obtained Mr. Leiderman's cell phone and discovered messages sent from a phone number registered to the Defendant to Mr. Leiderman. The Defendant's messages referred to obtaining drugs from Mr. Leiderman and her questioning him about why the "main ingredient" did not "happen." The Defendant asked Mr. Leiderman to "swing by" her house, and Detective Johnson deduced that the Defendant was supplying Mr. Leiderman with the fentanyl-laced pills. Detective Johnson worried that the Defendant would hear about the search warrant being executed on Mr. Leiderman's house and would destroy the pills in her possession. Posing as Mr. Leiderman, Detective Johnson messaged the Defendant that he would come to her house.

About an hour later, the search team left Mr. Leiderman's house and drove to the Defendant's residence. As part of his ongoing investigation, Detective Johnson had surveilled the Defendant's residence the prior day, and so he knew the location of her residence. He travelled there in an unmarked police vehicle, accompanied by other marked police vehicles. Mr. Leiderman had been detained in one of the vehicles. When the convoy arrived at the Defendant's residence, Detective Johnson knocked on the front door and identified himself to the Defendant. He informed her that he knew, through her messages to Mr. Leiderman, that she had illegal prescription pills inside her residence. Detective Johnson pointed out to the Defendant that Mr. Leiderman was sitting in the back of the patrol vehicle, to indicate to the Defendant that he was being truthful about arresting

2

Mr. Leiderman and communicating with her through his phone. After seeing Mr. Leiderman, the Defendant changed her attitude, apparently because she knew Detective Johnson was being truthful about the evidence he had.

Following this exchange, Detective Johnson went back to his patrol vehicle, which was parked in the Defendant's yard, and obtained a consent to search form and a digital recorder. He returned to the Defendant's residence and activated the recorder. The recorder captured Detective Johnson reading the consent to search form to the Defendant, her signing the form. The recording was played in open court. Detective Johnson clarified that, prior to the Defendant signing the consent form, she gave him 200 pills, which had been inside an envelope in the Defendant's living room.

After the Defendant signed the form, she told Detective Johnson that she had distributed thousands of pills. She also identified her source for the drugs and, in the presence of Detective Johnson, attempted to call her source to order more pills. During the course of their conversation, Detective Johnson found the Defendant to be cooperative and engaged; she appeared educated.

Detective Johnson testified that none of the officers who were present raised their voices with the Defendant or pulled their weapon. Detective Johnson told the Defendant that he would obtain a search warrant for her residence if she refused his request to search.

On cross-examination, Detective Johnson testified that his investigation had been going on since 2015 and that the Defendant had been identified as a suspect in 2017. He stated that, on the day he went to her residence, he was accompanied by a total of six police vehicles. He testified that he explained to the Defendant the steps involved with her consenting to a search, or, in the alternative, him detaining her and the occupants of her residence while he obtained a search warrant. Detective Johnson agreed that he "showed" Mr. Leiderman to the Defendant while Mr. Leiderman was in custody in the back seat of the police vehicle. He agreed that "showing" Mr. Leiderman to the Defendant was proof that the "group" had been caught and that, after seeing Mr. Leiderman, the Defendant began to cooperate. Detective Johnson's conversation with the Defendant initially took place on her porch. After gaining her consent to search the residence, they moved into the living room, and the Defendant sat on the couch. He testified that very early in their conversation he explained that he had come to her house to take possession of the 200 pills she was communicating about with Mr. Leiderman.

Tony Bean testified that he was the chief deputy for the Grundy County Sheriff's Department and that he went to the Defendant's residence after participating in the execution of a search warrant at Mr. Leiderman's residence. He testified that he knew where Mr. Leiderman lived and agreed that the Defendant's residence was not on the direct

route from Mr. Leiderman's residence to the jail. He recalled that fourteen officers were present at the scene when the Defendant's residence was searched, traveling in a total of seven police vehicles. Deputy Bean knocked on one of the doors to the Defendant's residence and her son answered; Deputy Bean overheard the exchange with the Defendant at another door and went to that door. Deputy Bean stated that Detective Johnson was the "lead" officer on the scene. Deputy Bean recalled when the agents detained Mr. Leiderman at his home and that Mr. Leiderman sustained a cut above his eye which Deputy Bean bandaged up.

Jerry Kilgore testified that he was the Defendant's son and that he lived with his roommate and his seven-year-old son in one side of a duplex and his parents lived in the other side of the duplex. He was at home asleep on July 25 when, at 11 a.m., he was awoken by his son who reported that law enforcement agents were in their yard. Mr. Kilgore went to the door and opened it to find police officers "everywhere." The officer at Mr. Kilgore's door told him to sit down at his kitchen table, and Mr. Kilgore remained seated there for one and a half to two hours. He was not allowed to move from the kitchen table; neither was his roommate or his son. Mr. Kilgore was able to view the activity in his yard on his security camera. Mr. Kilgore recalled that he felt frightened, as did his son.

Based on this evidence, the trial court denied the Defendant's motion to suppress, concluding that the Defendant voluntarily consented to the search of her residence. The trial court issued an agreed order reserving the following certified question of law:

> Whether the warrantless search of the [Defendant's] home by Agent Chad Johnson of the 12th Judicial Task Force on July 25, 2017, based upon the alleged voluntary consent of the [D]efendant, violated [the Defendant's] rights granted pursuant to the Fourth Amendment to the U.S. Constitution and Article 1, Section 7 of the Tennessee Constitution and whether any evidence or statements obtained as a result of said warrantless search should be suppressed as the fruits of an unconstitutional seizure, under the criteria set forth in *State v. Cox*, 1717 S.W.3d 174, 185 (Tenn. 2005). [The] Defendant, in the instant case, maintains that her consent was coerced due to the police presence and procedures employed at her home before consent was obtained.

Thereafter, the Defendant pleaded guilty to possession of a schedule IV controlled substance, with the intent to sell or deliver. The trial court entered the judgment incorporating the above certified question of law and sentenced the Defendant to three years of supervised probation.

## II. Analysis

## A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)). Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment or conviction occurring as the result of a guilty plea. *State v. Long* 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;
>
> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *Preston*, our supreme court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)." 759 S.W.2d at 650. Failure to properly reserve a certified question of law pursuant to the requirements stated in *Preston* will result in the dismissal of the

appeal. *Troy Lynn Woodlee*, 2010 WL 27883, at \*2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)). The importance of complying with the *Preston* requirements has been reiterated by our supreme court in *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37. *Id.* at 912. Further, this court has consistently and repeatedly held that the *Preston* requirements are jurisdictional. *See State v. Faith Whitley*, No. W2006-02595-CCA-R3-CD, 2008 WL 450617, at \*3 (Tenn. Crim. App., at Jackson, Feb. 19, 2008) (citations omitted).

We conclude, for the reasons laid out below, that the question in this case is not dispositive of the outcome of the case. We further conclude that the question is overly broad. Therefore, the question violates the requirements provided in Tennessee Rule of Criminal Procedure 37(b)(2) and the mandates announced in *Preston*.

First, we conclude that the question of law regarding the search of the Defendant's residence is not dispositive to the Defendant's conviction for possession of controlled substances. Appellate courts frequently disagree with a trial court's finding of dispositiveness and, accordingly, decline to consider the reserved question. *State v. Dailey*, 235 S.W.3d 131, 136 (Tenn. 2007) (stating that "numerous attempts to appeal certified questions have been unsuccessful on the basis that the certified question was determined by the appellate courts not to have been dispositive."). It is enough for the record on appeal to demonstrate that evidence apart from the challenged item supports the State's charges. *Id.* If the record does indeed contain evidence in surplus of that which supports the State's charges, then the defendant's reserved question is not dispositive and, therefore, not eligible for review. *See id.*; *see also* Tenn. R. Crim. P. 37(b)(2).

The evidence presented at the suppression hearing showed that the Defendant answered the door to her residence. When told by Detective Johnson that he knew she had the 200 pills in her possession and, after being shown evidence of her communications regarding the drugs with Mr. Leiderman, she admitted to possessing the pills and turned them over to the deputy. She also stated that she had sold thousands of pills. In our view, in light of the Defendant's admission to possession of the pills, her turning over those pills, and her admitted history of selling the pills, the subsequent search of her residence and the question of its legality is not dispositive and, therefore, is not properly before this court. As such, we cannot properly review this issue pursuant to Tennessee Rule of Criminal Procedure 37.

Second, the certified question is overly broad because it is not clearly stated as to identify the scope and limits of the legal issue reserved. The Defendant bears the burden of "reserving, articulating, and identifying the issue." *State v. Pendergrass*, 937 S.W.2d

834, 838 (Tenn. 1996). The question as posed does not narrowly construe the issues and does not sufficiently identify the scope and limits of the alleged constitutional violations. The question does not articulate the factors supporting the Defendant's argument that her consent to search was coerced nor does it list the "procedures" used by law enforcement before her consent was obtained.

Therefore, we lack jurisdiction to review the merits of the Defendant's claim because she failed to properly reserve her certified question of law. We take no satisfaction in the dismissal of this or the many other failed Rule 37(b)(2) appeals. We, however, cannot assume jurisdiction where it is denied due to failures in meeting the strict prerequisites. *See Armstrong*, 126 S.W.3d at 912; *Whitley*, 2008 WL 450617, at *3.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the certified question presented in this appeal is not dispositive, and that the Defendant failed to properly frame her certified question of law. As such, this court has no jurisdiction to entertain the appeal, and the appeal is dismissed.

_____
ROBERT W. WEDEMEYER, JUDGE